ROBERT E. MCKINNEY *vs*. A. H. BODE.

June 15, 1885.

**School Lands—Effect of Patent.**—Upon the sale of state school lands the patent passes the legal title to the grantee named in it, and supersedes the certificate of sale. The right to possession of the land vests in such grantee. The patent cannot be avoided for irregularities on the part of the officers whose business it is to issue patents in such cases, though it may be defeated by want of title in the state, or want of power in the officers. Except in such cases, the patent, when regular on its face,— that is, when in proper form, and signed by the proper officers, and with the proper seal,—is conclusive evidence of the legal title.

**Same—Enforcing Prior Equities.**—One who has a prior equitable right to receive the patent, superior to that of the patentee, may enforce his equity by action, (or when he is defendant, by answer,) in which the court may cause the legal title to be vested in him, and may adjudge the possession to him.

**Same—Title under Patent Sustained.**—At a sale of school lands in 1872, M. purchased a tract of such land, paid part of the purchase price, and the interest on the remainder to the succeeding June, received the usual certificate, went into possession, built a house, paid the interest due June, 1873, and remained in possession till December, 1873, when he executed an assignment of the certificate to his wife, and abandoned the land and his wife and family, and never afterwards resumed possession, nor gave any further attention to the matter. The wife and family remained in possession, and from December, 1873, a son who remained with his mother paid the taxes on the land and the interest on the unpaid purchase-money, for and on account of his mother, until her death, in 1880, and after her death for and on account of her estate, until November, 1880, when the administrator of her estate, under license from the probate court, sold and assigned the certificate to A. The latter thereupon paid to the land commissioner all arrears of principal and interest on the certificate, and a patent for the land was issued to him. *Held*, that although the assignment of the certificate to the wife was void, M. had at the time of issuing the patent no equity to the land as against A.

Ejectment. After the decision in this action, reported 32 Minn. 228, the defendant demanded a second trial, at which a verdict was

directed by *Koon*, J., for plaintiff. Defendant appeals from an order refusing a new trial.

*R. B. Galusha* and *Benton & Roberts*, for appellant.

*D. A. Secombe*, for respondent.

Plaintiff, as purchaser under the certificate, is entitled to maintain this action to recover possession of the land. Gen. St. 1878, c. 38, § 17. The patent to R. B. Angus is invalid by reason of the invalidity of the assignment, of which invalidity Angus was chargeable with notice. Gen. St. 1878, c. 69, § 4; *Arper* v. *Baze*, 9 Minn. 98, (109;) *Place* v. *Johnson*, 20 Minn. 198, (219;) *Wilder* v. *Haughey*, 21 Minn. 101.

GILFILLAN, C. J. The case comes here from a second trial in the court below. On that trial, the court, considering the case made to be substantially the same as on the first trial, the merits of which were before this court at the April term, 1884, directed a verdict for the plaintiff. But the case made at the second trial was materially different from that made on the first; for on the first trial the defence insisted upon was, in substance, that the certificate of sale upon which plaintiff bases his claim to recover, had become forfeited for non-payment of interest and of the deferred part of the principal. On the second, it was that, pursuant to the certificate and divers alleged assignments of it, and upon the payment of the interest and deferred principal by the assignees, the patent of the state for the land was issued to one Angus, and vested the legal title in him, and that defendant subsequently acquired and has his title.

The facts indicated by the evidence are:

That at the sale of school lands by the state land commissioner (the state auditor) in the county of Hennepin, in November, 1872, the plaintiff became the purchaser of the land in controversy, he then paying part of the purchase price, and interest to the then next June on the remainder, and received from the commissioner the usual certificate of sale, showing that if the purchaser, his heirs, assigns, or other legal representatives, should pay in advance the interest on the remainder of the purchase price on the first day of June in each year, also all taxes accruing as they should become due, and the remainder of the price at any time within 20 years from the date of the cer-

tificate, he, his heirs, assigns, or other legal representatives, should be entitled to a patent for the land; but, in case of failure to make such payments, the certificate should, from the time of such failure, be utterly void and of no effect, and the commissioner might take possession of and resell the land.

Plaintiff, with his family, went into possession of the land, built a house on it, paid the interest due June 1, 1873, and remained in possession until December, 1873. At that time he indorsed on the certificate an assignment of it to Mary McKinney, who was his wife, (though that fact did not appear in the assignment,) and thereupon he left the land and his wife and family, they remaining in possession, and never afterwards returned to it except as a visitor, and never afterwards lived with or contributed to the support of his wife or family, and never afterwards made any payment of interest, taxes, or principal, upon or on account of the certificate or the land, and never gave any further attention to the matter until he commenced this suit in 1883. The wife and family remained on the land until her death, in 1879. After December, 1873, and until November, 1880, her son paid for her, and after her death for her estate, the taxes upon the land and the interest accruing on the certificate. November 15, 1880, the administrator of her estate sold, under a license from the probate court, the certificate, and indorsed on it an assignment of it to Angus, who on that day surrendered it to the land commissioner, paid all arrears due upon it, and the commissioner thereupon issued to him a patent for the land. The defendant subsequently acquired and now has whatever title was thus vested in Angus.

There were certain other facts in evidence pertaining to the issuance of the patent happening prior to its issuance, which plaintiff claims render it invalid, so that no title passed by it; such as that the certificate of the commissioner, which Gen. St. 1878, c. 38, § 12, requires shall be indorsed on the certificate of sale and presented to the governor before he shall cause a patent to issue, was in this case not signed by the commissioner; and that this patent, when signed and acknowledged by the governor and commissioner, was not filled up, but that a form with blanks had been so signed and acknowledged, and left in the office of the commissioner, and, when this patent was

applied for, a clerk in the office, the commissioner being present, filled the blanks in the form, and that it was afterwards delivered by the commissioner, or by his direction, to Angus or his agent.

Until the patent issued, the legal title remained in the state. Gen. St. 1866, *c*. 38, § 12. The certificate gave the purchaser a right to the possession of the land, (section 17,) and by complying with its terms he could become entitled to a conveyance of the legal title. In this respect it was in effect similar to an ordinary contract for purchase, with perhaps this difference: that a default in its conditions would absolutely terminate all rights under it. It became *functus officio* on the issuance of the patent. The patent, when regular on its face,—that is, when it is in proper form, is signed by the proper officers, and has the proper seal,—is conclusive evidence of the legal title. *Johnson* v. *Towsley*, 13 Wall. 72; *Gibson* v. *Chouteau*, Id. 92; *Boardman* v. *Reed*, 6 Pet. 328; *Green* v. *Liter*, 8 Cranch, 229; *U. S.* v. *Arredondo*, 6 Pet. 691, 724; *Patterson* v. *Tatum*, 3 Sawy. 164; *Pacific Coast Min. & Milling Co.* v. *Spargo*, 8 Sawy. 645; S. C. 16 Fed. Rep. 348; *Sherman* v. *Buick*, 93 U. S. 209.

The purchaser is not required to look behind it; all the incipient steps authorizing the officers to issue it are presumed to have been regularly taken. It cannot be avoided (in a collateral action, at any rate) for irregularities in the conduct of those who are appointed by the government to supervise the progressive course of a title from the commencement to its consummation in a patent. *Polk's Lessee* v. *Wendal*, 9 Cranch, 87; *Lea* v. *Polk Co. Copper Co.*, 21 How. 493; *Johnson* v. *Towsley, supra*. It is conclusive proof of the act of granting by the state. *U. S.* v. *Arredondo, supra*. But it may be defeated, even in an action at law, by showing want of title in the state, or absolute want of power in the officers to issue it. *Polk's Lessee* v. *Wendal, supra; Sherman* v. *Buick, supra*. It would certainly be contrary to public policy to permit a patent, which is issued by sworn officers, and is deemed of so high a character, as evidence of title, as sometimes to be designated as of "absolute verity," (*U. S.* v. *Arredondo*,) to be assailed by every one, in every kind of proceeding, for irregularities of the officers issuing it, for which the patentee is in no way responsible.

The legal title, then, passed from the state to Angus by the patent, and the right to the possession of the land went with the legal title. If any claimant for the patent or for the possession of the land was wronged in this, he has an adequate remedy. Where the rules of law and the principles of equity are administered by different courts, it would be by a bill in equity, upon which the court could establish his equitable rights, and by its decree declare the patentee to hold the legal title in trust for him, and compel a conveyance, and furnish such other relief as might be appropriate. In this state, the two jurisdictions being united in the same court, and the same form of action provided for all causes of action, however formerly classified as legal or equitable, an action may be brought and the same relief administered as could be administered upon a bill in equity and the legal action of ejectment—that is, the judgment may vest the legal title in the plaintiff, and also adjudge the possession to him. And if the claimant against the patent is in possession, and the action is against him to recover it, by one claiming under the patent, he may by his answer present his equities, as formerly, by a bill in equity, and thereupon the judgment may vest the legal title in him, and retain him in possession. So that there may be accomplished now in one action what formerly might require two. But though the mode of presenting his claims is changed, there is no change in the principles upon which they are to be determined. He must still allege and prove the facts upon which the equities claimed by him arose. A mere issue on the fact of legal title will not let in proof of any equities, and he must establish such a case of superior equity to the land, as against the patentee, as would have been required upon a bill in equity. He must show that he was equitably entitled to the land, and to the issuance of a patent to him, so that the issuance of it to the patentee, and the retention of the legal title and possession by the latter, operate as a fraud upon him. Otherwise the legal title evidenced by the patent must prevail.

Did this plaintiff show such superior equities? The bare statement of the foregoing facts indicates the proper answer. Seven years before the patent issued, he abandoned the land, and gave up the design to become himself entitled to a patent; abandoned, in fact if not in

law, all interest in the matter. Had nothing been done but what he did, all rights under the certificate would have been forfeited six years before the patent issued. Others, by performing its conditions, kept it alive, not acting upon his procurement nor for him, nor intending what they did to be for his benefit, but acting in their own behalf, for their own interest, and upon the notion (grossly mistaking the law) that the legal interest in the certificate had passed by his assignment to Mrs. McKinney. And after the patent was earned and issued, he seeks to appropriate the benefit of what was done by those who earned it, taking his stand solely on the naked legal proposition that his attempted assignment to Mrs. McKinney was void. There is no equity in that.

Order reversed.