JOHN A. MURPHY *vs.* FRANK BURKE, JR., and another.

August 10, 1891.

School-Lands — Abandonment by Certificate-Holder. — Evidence *held* sufficient to sustain a finding that the holder of certificates of sale of school-lands abandoned all claim to the lands.

Same—Subsequent Patent to Purchaser at Void Tax-Sale.—After such abandonment, and an utter neglect for more than 10 years, and until patents issued to another, to comply with the conditions of the certificates, the equity of the holder of the certificates to the patents is not superior to that of one who, under a void tax-sale of the lands, complies with the requirements of the certificates and of the law, and receives the patents.

Appeal by plaintiff from an order of the district court for St. Louis county, refusing a new trial after a trial before *Start,* J., (acting for a judge of the 11th district,) and judgment ordered for defendants Burke and Beriah Magoffin.

*D. H. Twomey* and *Spencer & Washburn,* for appellants.

*Wm. W. Billson,* for respondent Magoffin.

*Edson & Edson,* for respondent Burke.

GILFILLAN, C. J. As the facts are found by the court below, on November 6, 1872, J. B. Culver, at a public sale of school-lands, purchased from the state the lands described in the complaint, consisting of three quarter-sections, at the price of $800 per quarter-section, paying on each quarter-section $200, and the interest on the remainder up to June 1st then next, and received from the land-commissioner the usual certificate of sale for each quarter-section, requiring payment of the remainder of the purchase price at any time within 20 years, and payment of the interest thereon at the rate of 7 per

cent. per annum on the 1st day of June of each year. Culver afterwards paid the interest to June 1, 1875, and the taxes to and including 1874. September 10, 1875, Culver assigned the certificates to the First National Bank of Duluth. One C. P. Bailey was, under the laws of the United States, appointed receiver of said bank; and as such receiver, on the 11th day of December, 1880, assigned the certificates to one R. C. Mitchell, in consideration of $1.50. September 2, 1890, Mitchell assigned the certificates and quitclaimed his interest in the lands to plaintiff.

August 28, 1877, a tax judgment was entered against each quarter-section for the taxes of 1875 and 1876. September 17, 1877, pursuant to the judgment, the lands were sold, or attempted to be sold, and for want of bidders struck off to the state, and a certificate thereof made by the county auditor. In this certificate the quarter-sections were designated thus: "N. E.$^4$, N. W.$^4$, S. W.$^4$"—the section, township, and range being properly designated. There having been no redemption, April 2, 1886, pursuant to the provisions of Gen. St. 1878, c. 11, §§ 101, 102, the county auditor sold and conveyed the premises to Frank Burke for the consideration of $801.07, and the deed of conveyance was recorded April 6, 1886. April 7, 1886, Burke applied to the land-commissioner to make payment of the interest due (being for more than ten years) on said certificates, and filed his said deed with the commissioner, and paid said interest, and the commissioner issued to him the special certificate of purchase provided in Gen. St. 1878, c. 38, § 21. April 8, 1886, Burke, in good faith, paid to the state all the principal and interest then remaining due on said certificates; and thereupon a patent for the land was issued to him, and he conveyed to defendant Magoffin.

October 21, 1890, plaintiff sought to find Magoffin in order to tender to him the proper amount, and demand a conveyance of the land, but ascertained that he was out of the state; and plaintiff immediately brought this action, offering to bring into court such sum as, on an account taken, shall be found due Magoffin or any of the other defendants. The premises are now worth $96,000.

In addition to the foregoing facts, the court made this finding: "That prior to September 2, 1890, when he assigned said certificates

to the plaintiff, the said Mitchell never paid any interest on said certificates or any of them, or taxes on said premises or any part of them, and never gave any attention to said premises, or asserted any interest therein; that in those respects he was guilty of such laches, want of ordinary diligence and prudence, as to justify the conclusion that he had abandoned all claim to said premises, and it is so found from the evidence in this case as a question of fact." It is also found as a fact that, after the purchase by Culver, taxes were annually assessed on the lands; but that neither he, nor any of the persons claiming under the assignments from him, ever paid or offered to pay said taxes or any of them, except up to and including the taxes for 1874. Neither did they or either of them pay or offer to pay any part of the interest annually accruing on said certificates subsequent to June 1, 1875. It does not appear that the lands were ever occupied.

The action is brought on the theory that plaintiff's assignor, Mitchell, was equitably entitled to the patent issued to Burke, and that the latter received, and his grantees hold, the legal title in trust for Mitchell and the plaintiff, his grantee.

The validity of the tax judgment and sale is assailed on the grounds that, the county commissioners not having properly designated a newspaper in which to publish the tax-list and notice, the court had not jurisdiction to render the judgment, (though we think this objection not well founded,) and that the sale certificate does not properly describe the lands.

If the tax-sale were valid, that, of course, would be decisive of the case, for, in that event, the purchaser from the state would have been in law the successor in interest of the person to whom the school-land certificates issued. But it does not follow that, if the tax-sale was void, the plaintiff would be entitled to judgment. In *McKinney* v. *Bode*, 33 Minn. 450, (23 N. W. Rep. 851,) the person to whom the patent issued claimed and had acted under an absolutely void assignment of the school-land certificate, yet we held that the patentee was entitled to retain the land.

The plaintiff also assigns as error that the finding of fact that Mitchell had abandoned all claim to the premises is not sustained by

the evidence, in this: that there is no evidence of the assessment of taxes after those paid by Culver. It is not claimed that, at any time prior to the assignments by him to plaintiff, Mitchell ever made any effort to ascertain if there were taxes to be paid, and there was some evidence that he did not. As, during a part of the time, at least, the lands were subject to taxation, and as they were taxed for some of the years, as shown by the judgment, it was a fair inference that Mitchell gave no attention to the matter, so far as the taxes were concerned. There is no pretence that, during the more than 10 years after Culver assigned the certificates, any one gave any attention to the interest accruing annually on them, although by their terms they were to become utterly void upon a default for more than 6 days. This conduct, explained by the merely nominal prices for which the certificates were assigned to Mitchell,—only a dollar and a half for the three; by the fact that at that time there was, in form at least, a tax judgment and tax-sale against the land, and the time for redemption expired; and there being nothing to suggest any other reason for it,—leads irresistibly to the conclusion that Mitchell did not deem it worth while to attempt to secure the lands by complying with the terms of the certificates, and getting rid of the tax judgment and sale, perhaps by litigation, and that, if he ever had any intention to so secure the lands, he abandoned it. The subsequent enormous increase in the value of the lands suggests a reason for the attempt to revive or resume it. The evidence fully sustains the finding.

We may concede that the tax-sale was void, yet it is apparent that it was an important element in the transactions, just as the void assignment in the *Bode Case* was. It undoubtedly induced action on the part of the person who complied with the law in respect to school-land certificates, and obtained the patent. There can be little doubt that it had influence with Mitchell in preventing his taking any steps to secure the lands under the certificates, and it must have been considered valid by the land-commissioner when he issued the special certificates. The title of the patentee and his grantees is unassailable, except by one who shows an equitable right to receive the patent superior to the equity of the patentee, so that the issuance of it to,

and the retention of the legal title by, the latter operates as a fraud upon him. Unless one shows such superior equitable right, it is no concern of his that the patentee was or was not legally entitled to receive it. The question is not, therefore, did the tax-sale transfer the legal right under the school-land certificates? but, assuming it to have been void, so that the legal title to the certificates was not affected, was the equity of the legal owner of them, who, for more than 10 years before they became *functus officio* by the issuance of the special certificates, utterly neglected to do anything that they required, and abandoned the intention to comply with them and secure the land, superior to that of the one who, acting upon the faith of the tax-sale, performed what the certificates and the law required, and so earned the patent? No argument is required to show that it was not. The case is not distinguishable from the case of *McKinney* v. *Bode.*

Order affirmed.

NOTE. The foregoing decision was followed in the case of *John A. Murphy* v. *Hattie McGuire et al.,* which involved the same question as the foregoing case, and was argued and decided at the same time with it.

*D. H. Twomey* and *Spencer & Washburn,* for appellant.

*Wm. W. Billson, S. D. Allen,* and *Howe Paige,* for respondents.