WETZEL et al. v. MINNESOTA RAILWAY TRANSFER CO. et al.

(Circuit Court of Appeals, Eighth Circuit. December 10, 1894.)

No. 496.

TITLE TO LAND—LACHES.

In 1848 a warrant for 160 acres of land was issued to R., the widow of a soldier in the Mexican war, and her minor children, of whom she was guardian. In the same year, R., acting individually and as guardian of her children, but without first obtaining the leave of the orphans' court, as required by statute, sold and assigned the warrant to one T., who located it, and in 1850 received a patent for the land, which subsequently became very valuable, and passed, by numerous mesne conveyances, into the hands of many holders, who made valuable improvements. The youngest child of R. attained majority in 1863. In 1892 the surviving children of R., and heirs of deceased children, brought this bill to establish their title to the land; alleging, as reasons for their delay, that they were ignorant till 1889 of the issue of the warrant, and that they were illiterate and inexperienced persons. *Held,* that as the plaintiffs were acquainted with the facts which, under the law, entitled them to receive a land warrant on account of their father's services, and as they are presumed to have known the law, and as slight attention to their rights would have disclosed the fact, many years prior to the filing of the suit, that a land warrant had in fact been issued in their favor, and had been assigned and located, and as many innocent parties had expended their money on the land, and acquired interests therein, which they supposed to be valid, and which it would be inequitable to disturb, the delay of the plaintiffs amounted to such laches as would bar a suit for equitable relief. *Held,* further, that the plaintiffs could not plead ignorance of the right asserted as an excuse for years of delay in asserting it, inasmuch as it appeared that such ignorance was due to their own neglect, in failing to take any steps to secure a land warrant which they knew they were entitled to. *Held,* further, that ignorance of one's rights will not serve as an excuse in a court of equity for not bringing a suit to enforce them, when such ignorance is fairly attributable to negligence, or to the party's failure to make such inquiries with respect to his rights as, with the information at his command, he ought to have made.

Appeal from the Circuit Court of the United States for the District of Minnesota.

This was a suit by Elizabeth Wetzel and others against the Minnesota Railway Transfer Company and others to establish title to land. Upon the hearing in the circuit court, the bill was dismissed for laches. 56 Fed. 919. Complainants appeal.

This was a suit by the appellants, who were complainants in the circuit court, to establish their title to an undivided interest in a certain tract of land situated in Ramsey county, Minn., to wit, the S. W. ¼ of section 28, township 29 N., range 23 W., which was patented by the United States to Nathan C. D. Taylor on the 20th of March, 1850, as assignee of Elizabeth Remsen, in her own right, and as guardian of the minor heirs of George W. Remsen, deceased. The facts out of which the controversy arose may be stated with substantial accuracy, as follows: George W. Remsen was a soldier in the Mexican war, and by virtue of his enlistment and service he became entitled, under the provisions of the ninth section of an act of congress approved on February 11, 1847, to 160 acres of land. 9 Stat. 123, 125. Said Remsen died in the service in the month of October, 1847, and under the provisions of said act his right to said land inured to the benefit of his surviving wife and children. On September 30, 1848, a warrant was duly issued to Elizabeth Remsen, widow of said George W. Remsen, and to Harriet A., Mary Ann, John W., Elizabeth, and George W. A. Remsen, children and heirs at law of said George W. Remsen, deceased, who was described in the warrant as "late a private in Company K, third regiment, United States infantry." At the time of the issuance of said warrant, all of said children were minors; Harriet A. Remsen, the oldest child, being then about 17 years of age. Section 9 of the act of February 11, 1847, aforesaid, provided in substance that, in the event of the issuance of a land warrant under said act to the minor children of a deceased soldier, "then the legally constituted guardian of such minor children shall, in conjunction with such of the children, if any, as may be of full age, upon being duly authorized by the orphans' or other court having probate jurisdiction, have power to sell and dispose of such certificate or warrant for the benefit of those interested." Elizabeth Remsen qualified as guardian of all the minors aforesaid, except Harriet A., the oldest, before the orphans' court of the county of Philadelphia, state of Pennsylvania, on October 6, 1848. Subsequently, and on the 11th of October, 1848, she sold and assigned the land warrant in question to Nathan C. D. Taylor, who located the same on the land now in controversy, and received a patent therefor, as heretofore stated. The assignment of said land warrant was executed by said Elizabeth Remsen, the mother, in her own behalf, "and as guardian of the minor children of George W. Remsen, deceased"; but she appears to have obtained no order from the orphans' court aforesaid, authorizing her to sell her children's interest therein. The assignment of the land warrant was also executed by Harriet A. Remsen, the oldest daughter, who had previously become the wife of Jacob Heyer, but her husband did not join with her in the execution of the assignment. By numerous mesne conveyances, covering a period of many years, the title to the aforesaid tract of land thus acquired by Nathan C. D. Taylor has now become vested in very many persons, who are in possession of different parcels of the land, and who were made parties defendant to the bill of complaint. All of the aforesaid minor children of George W. Remsen, deceased, lived to attain their majority, and for some years thereafter. The youngest of them, George W. A. Remsen, attained his majority as early as the year 1863; the others, except Harriet A., in the years 1856, 1858, and 1861. Elizabeth Wetzel, one of the appellants, is the former wife of George W. Remsen, who died in October, 1847, she having married Paul Wetzel since the death of her first husband. Harriet A. Van Zant, another of the appellants, is the oldest daughter of said George W. Remsen, who joined with her mother in the sale and assignment of the land warrant, as heretofore stated. John Wesley Remsen, also one of the appellants, is a son of George W. Remsen, deceased. The other children of said deceased heretofore named, to wit, Mary Ann, Elizabeth, and George W. A. Remsen, appear to be dead; and their interests

are represented in the present proceeding by the other appellants, to wit, by Emma F. Hergesheimer and Maggie L. Beckman, who were the daughters of Mary Ann Remsen, and by Mary J. Remsen and her children, George W., Clara B., and Mabel Remsen, who are, respectively, the widow and lineal descendants of George W. A. Remsen, now deceased. Elizabeth Remsen appears to have died, leaving no lineal descendants. It was claimed in behalf of the appellants that the sale and assignment of the aforesaid land warrant were utterly void, as to the interests of all the minor children of George W. Remsen, other than Harriet A., who joined in the assignment of the same, because the assignment made by their mother and guardian was not authorized by any order or decree of the orphans' court of the county of Philadelphia, as the act of congress required. They therefore prayed that the title of such minor heirs to an undivided interest in the tract of land aforesaid might be established, and that the defendants holding under the patent issued to Nathan C. D. Taylor might be adjudged to hold the legal title so acquired in trust for the appellants, and that they be compelled to convey the legal title to the appellants. On the final hearing the proceeding was dismissed on the ground of laches.

C. W. Bunn and William C. Mayne (William E. Bramhall, on the brief), for appellants.

C. K. Davis (F. B. Kellogg and C. A. Severance, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bill of complaint in this suit appears to have been filed in the circuit court of the United States for the district of Minnesota on the 28th day of May, 1892,—nearly 44 years after the land warrant which was issued to the widow of George W. Remsen and to his minor children was sold and assigned by the widow, acting for herself and as guardian of said minors, to Nathan C. D. Taylor, under whom the defendants now claim. When the suit was instituted, more than 42 years had come and gone since Taylor had located the warrant on the lands in controversy, and had obtained a patent therefor from the United States, and nearly 30 years had elapsed since the youngest minor child of George W. Remsen had attained his majority. In the meantime, two large cities, Minneapolis and St. Paul, had grown up in the immediate vicinity of the place where Taylor had located the warrant. For a number of years prior to the commencement of the suit, the property in question was within the outboundaries of one of these cities. It had been, to a large extent, subdivided into lots and blocks. It had become of immense value, and had been sold in separate parcels to numerous purchasers, who had made extensive improvements thereon. Some idea may be formed of the extent to which the property in question has changed hands, and of the number of persons whose interests are injuriously affected by the present litigation, from the admitted fact that there are more than 1,200 entries in the abstract of title which counsel for the complainants found it necessary to procure before the bill of complaint in the present suit could be intelligently drawn. These general facts, with respect to which there is no dispute, are sufficient, we think, to justify us in ignoring all other questions, and in directing our attention primarily to the important inquiry whether,

in view of the long period that has elapsed since the wrong complained of was committed, and since the minor heirs of George W. Remsen attained their majority, they and their descendants have shown such reasonable diligence as will serve to excuse the long delay in asserting their rights, and entitle them to relief in a court of equity.

The doctrine of laches has so often been applied by the supreme court of the United States and by this court, in cases bearing a strong likeness to the one at bar, that we deem it unnecessary, in this opinion, to enter into a general discussion of the subject. It is now well settled that, while the defense of laches is ordinarily available in equity in those cases where the plea of the statute of limitations would be effectual at law, yet in many instances, depending on a variety of circumstances, laches will be regarded as a good defense even where the plea of the statute would not be available at law. The plea of laches does not always depend for its support upon mere lapse of time, but upon the manifest inequity of permitting the claim to be enforced, in view of some change in the condition of the property or in the relations of the parties to the controversy. It is also a well-established rule that when a suitor applies to a court of chancery for relief, for any considerable length of time after the wrong complained of was committed, it is incumbent on him to show, both by averment and proof, some sufficient excuse to justify the delay. This latter rule, requiring a suitor to plead and prove some adequate excuse for his silence and inaction in every instance where there has been an apparent want of diligence, is applied and enforced with great strictness in those cases where a person seeks to fasten upon another a constructive trust with respect to personal or real property, and in those cases, as well, where the property in controversy has rapidly appreciated in value, or has been improved by those in possession, or when the rights of numerous third parties have intervened and attached. These principles have been recognized and applied in such a great variety of cases that it is hardly necessary to do more at present than to refer to a few of the leading authorities where they have been clearly stated and rigidly enforced. Badger v. Badger, 2 Wall. 87, 95; Godden v. Kimmell, 99 U. S. 201; Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873; Felix v. Patrick, 145 U. S. 317, 12 Sup. Ct. 862; Naddo v. Bardon, 4 U. S. App. 642, 2 C. C. A. 335, 51 Fed. 493; Lemoine v. Dunklin Co., 10 U. S. App. 227, 2 C. C. A. 343, 51 Fed. 487; Railroad Co. v. Sage, 4 U. S. App. 160, 1 C. C. A. 256, 49 Fed. 315; Kinne v. Webb, 4 C. C. A. 170, 54 Fed. 34; Ashhurst's Appeal, 60 Pa. St. 290.

In the case at bar the complainants have attempted, in accordance with the foregoing rule, to show by their bill and their proofs that their long silence and inaction, extending over a period of 29 years after the youngest child of the deceased soldier attained his majority, were due to causes beyond their control, which should be accepted as a valid excuse by a court of equity. With reference to the excuse so pleaded, it may be said that the plaintiffs allege in substance that none of the minors, except Harriet A. Remsen, who joined with her mother in the assignment of the land warrant, had any intimation

that the warrant had been issued or that the same had been sold until some time in the latter part of the year 1889, and that they did not become possessed of all of the facts stated in the bill until the month of August, 1891. It is further said in their behalf that they were persons occupying a humble station in life, and that they were, to a certain extent, illiterate and inexperienced. It is not claimed, however, that any fraud was practiced upon the plaintiffs, or that knowledge of the issuance and sale of the land warrant was intentionally concealed from them, with a view of preventing them from asserting their rights, either before or after they attained their majority. The case rests, therefore, so far as any excuse for the delay in bringing suit is concerned, solely upon the plea of long-continued ignorance, unaffected by any other extenuating circumstances. Is this excuse sufficient to give them a standing in a court of equity, upon the state of facts disclosed by this record? Proceeding to consider this question, we may be permitted to intimate a serious doubt whether all or any of the minor heirs of George W. Remsen, who are represented in this action, were in fact ignorant of the issuance, sale, and assignment of the land warrant by their mother and older sister when the sale was made. At that time, Mary Ann Remsen, the mother of two of the plaintiffs, was about 14 years of age; John Wesley Remsen, one of the present plaintiffs, was a boy at least 11 years old. They were then living with their mother, and the family appears to have been possessed of limited means, and to have been in straightened circumstances. Under these conditions, it is possible, of course, that the sale of the warrant and receipt of the purchase money was only known to the mother and oldest daughter, but it is by no means probable that such was the fact. It is more reasonable, we think, to believe that a transaction of such importance to people in their then condition was frequently discussed or mentioned in the family circle, and that it was well known to all of the children who were then capable of understanding facts or events of that nature. At this late day it is easy for those of the children who are still living to say, with much apparent sincerity, that they had no knowledge of the issuance and sale of the warrant, while it is practically impossible for the defendants to disprove such assertions. For these reasons, we think that the testimony tending to show ignorance of the transaction in question, as an excuse for the long years of delay, should be received and acted upon by a chancellor with great caution, even if it is not entirely discredited. There are some facts, however, of which the plaintiffs do not pretend to have been ignorant. It is admitted—or, if not admitted, it is apparent from the testimony—that all of the minor heirs well knew that their father was a soldier in the Mexican war, that he died in the service, and that their mother was in receipt of a pension on account of such service. They were all affected, at least when they attained their majority, with knowledge of the law which granted to them and to their mother 160 acres of land, and entitled them to receive a warrant therefor from the government. This latter fact is one, we think, of which the plaintiffs cannot be permitted to plead ignorance. It is also a fact which should

have inspired some affirmative action on their part, with a view of ascertaining their rights, within a reasonable period after they, respectively, became of full age, and were entitled to receive their inheritance. Assuming that they were each utterly ignorant until they became of full age of the previous issuance and sale of the land warrant, yet a simple inquiry addressed to the land department could not have failed to have made them acquainted, more than 30 years ago, with all of the facts attending the issuance and sale of the warrant which they have since learned. At that time—say from 1856 to 1863, during which period the several minors became of age —the land in controversy, which is now worth nearly if not quite a million dollars, was then worth not to exceed fifteen hundred dollars, and but few conveyances affecting the same had been made. These are facts which a court of equity cannot overlook. in determining whether the plaintiffs have exercised such reasonable diligence as they were required to exercise. It must be presumed that they were acquainted with the law which, on a state of facts that was well known to them, entitled them to receive a certain gratuity from the government on account of their father's enlistment and services. They must also be presumed to have known whatever would have been discovered, had they made such use of the knowledge which they are presumed to have possessed, as other persons of fair intelligence would have made of it. Stating the proposition in a different form, it may be said that they cannot plead ignorance of the rights now asserted, as an excuse for long years of delay, when it is evident that such ignorance was due to their own neglect in failing to take any steps to secure a land warrant which they knew they were entitled to, if it had not already been issued. While it is true that ignorance of one's rights will frequently serve as an excuse in a court of equity for not bringing a suit to enforce them, yet it will never have that effect where such ignorance is fairly attributable to negligence, or to a party's failure to make such inquiries with respect to his rights as, with the information at his command, he ought to have made.

It has been suggested by counsel that it is a harsh rule which imposes on the plaintiffs the duty of knowing the law, and of thereby knowing, many years ago, that they were entitled to a land warrant. It is also suggested that the old maxim, "Ignorance of the law excuses no one," is not applicable to the present case. In almost the same breath, however, it is confidently asserted that all of the numerous persons who, for the past 30 or 40 years have bought portions of the land now in controversy, some of whom were doubtless as ignorant and inexperienced as these plaintiffs, are each and all of them affected with knowledge of the invalidity of their respective titles, because the records do not affirmatively show that the sale of the land warrant under which they derived title was made pursuant to an order of the orphans' court, as the act of congress required. We confess our inability to perceive that the rule in question is any less harsh or oppressive in the latter case than in the former. If it can be invoked by the plaintiffs to affect the defendants with notice of the flaw in their title, then, with equal jus-

tice, it can be invoked by the defendants for the purpose of showing that the plaintiffs were many years ago affected with such knowledge of the law and facts as should have put them upon inquiry. For the foregoing reasons, we have felt constrained to hold that the plaintiffs failed to show such diligence in ascertaining their alleged rights as entitled them to relief in a court of chancery. It is as much the duty of a suitor in equity to be diligent in discovering his rights as it is to be prompt in asserting them after they become known. In the present case, nothing appears to have been done by the minors, for more than 30 years after they became of full age, with a view of finding out whether a land warrant had ever been issued by the government, although they are presumed to have had knowledge during all of that period that they were justly entitled to one. Such conduct on their part either amounts to gross laches, or it creates a strong presumption that they were fully aware of the issuance and sale of the land warrant in question; and, for the purposes of this case, it matters not which of these views ought to be adopted.

There is another potent reason why the decree dismissing the bill of complaint ought not to be disturbed. It has already been stated that, in applying the doctrine of laches, courts of equity are not influenced solely by lapse of time, but by other considerations as well, which render it obviously inequitable to grant the relief prayed for. They have a limited discretion in determining under what circumstances they will afford redress, and the hand of the chancellor will always be stayed when to act would be to do an injustice. Galliher v. Cadwell, supra; Felix v. Patrick, supra; McKinney v. Bode, 33 Minn. 450, 23 N. W. 851; Murphy v. Burke, 47 Minn. 99, 49 N. W. 387. In the present case there has not only been long—and, as we think, inexcusable—delay, but it would be grossly unjust to grant the relief which these plaintiffs seek to obtain. More than 40 years ago the widow of George W. Remsen sold the land warrant in question for its full value, and doubtless used the proceeds for the support and maintenance of her minor children. If she sold it without having obtained the requisite authority from the orphans' court, her action was due solely to a mistake of law. The testimony does not raise the slightest suspicion of fraud or attempted concealment either on her part or on the part of the purchaser. Through the foresight of the purchaser of the warrant it was located in the vicinity of two frontier villages, which have since become large cities, and the land has become of immense value. Hundreds of people who were at least as innocent as these plaintiffs have since expended their means in purchasing portions of the property, and in improving it in divers and sundry ways. The plaintiffs live a thousand miles distant from the premises. It was not through any foresight of theirs that the fortunate selection of the land was made, and they have never contributed a dollar towards its improvement. It only requires a glance at these facts and at this situation to warrant us in saying that no greater wrong could be perpetrated under the

guise of administering justice than by granting the relief prayed for in the present suit. The decree of the circuit court dismissing the bill is therefore affirmed.