LITCHFIELD v. BROWNE et al.

(Circuit Court of Appeals, Eighth Circuit.    October 1, 1895.)

No. 442.

LACHES—WHAT CONSTITUTES—FRAUD—RESCISSION OF CONVEYANCES.

The right to rescind conveyances, arising out of the collusion of the vendor's agent with the purchaser, and their concealment of the fact that the land was valuable for coal-mining purposes, as well as the right to recover damages from the purchaser, *held* to have been lost where, after obtaining knowledge of the facts, the vendor received the notes and mortgages for deferred payments, and thereafter neglected to disaffirm the sale for three years and three months, during which the lands were conveyed to other parties, who expended large sums in prospecting and developing them.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

The statement of this case by Mr. Lehmann, of counsel for the appellees, is accurate and concise; and, in substance, we adopt it.

The bill is filed to secure the rescission of certain conveyances of land which were made in January, 1882, by E. C. Litchfield, the original complainant, to L. F. Collins, Joseph Stanfield, and James Taylor; and, failing in that, it seeks to recover a judgment for damages against Hamilton Browne and James J. Hill, trustee. The ground of rescission stated in the bill is that Collins, Stanfield, and Taylor were only nominally interested, the real purchaser being the defendant Hamilton Browne; that Browne is a speculator in coal lands, and bought the lands in question believing them to be underlaid with coal; that this was known to Litchfield's agent, John Browne, who was the father of Hamilton Browne, but was not known to Litchfield; and that John Browne conspired with his son to keep the knowledge of this important fact from his principal, they both knowing that he would not sell the lands at their mere surface value if he knew Hamilton Browne to be the purchaser, or that they were probably underlaid with coal. These averments of the bill we find to be true, and Mr. Litchfield had an undoubted right to disaffirm the conveyances in a reasonable time after the facts of the fraud came to his knowledge. The suit for rescission was brought in May, 1885,—three years and four months after the conveyances were made. In the meantime the lands had been conveyed, in the latter part of 1882, to James J. Hill; and in 1883, by James J. Hill to James J. Hill as trustee; and in 1884 by James J. Hill, trustee, to the Clyde Coal Company. The suit was originally brought by Edwin C. Litchfield against Hamilton Browne and James J. Hill, trustee. The Clyde Coal Company was subsequently made a defendant. The sole reason set out in the bill for not sooner bringing it is that Litchfield did not become aware of the fraud which was practiced on him until after the conveyance to Hill, trustee. Litchfield died, and the suit was revived in the name of Edward H. Litchfield, as his executor. On January 20, 1882, John Browne, Litchfield's agent, died. Litchfield at once sent out L. S. Rhoads, his agent, to Des Moines, to look after the business of Browne's agency; and while he was there, on the 6th and 7th days of February, Hamilton Browne came to him with the money constituting one-fourth of the purchase price of the lands (the amount to be paid in cash), and notes for the deferred payments, executed by Collins, Stanfield, and Taylor, secured by mortgages upon the tracts of land conveyed to them, respectively. This money and the notes and mortgages were taken by Rhoads, and receipted for by him to Hamilton Browne, and shortly thereafter delivered to Litchfield. While there, Rhoads was informed that Browne was the real purchaser, that the lands were coal lands, and that Browne intended to sell them. He went to Browne, and asked him to return the receipts, in order that he might change them and make them subject to the approval of Mr. Litchfield. This was refused.

Rhoads returned to New York in the following March, and reported what he had learned with respect to these sales to Mr. Litchfield; that is, that Browne was the real purchaser, that the lands were believed to be coal lands, and that Browne intended to sell them. Mr. Litchfield then said to him that he would not be bound by the transaction, but he took no steps to disaffirm it until this suit was brought. In the meantime the parties who had become interested with Browne in the purchase of the lands were expending large sums of money in prospecting them for coal, and in acquiring adjoining lands with a view to engaging in the business of mining coal, the conduct of which involved, not only the exploration of the lands, but, as well, the construction of railroads and other expensive works. These operations and expenditures begun by Browne and Hill were continued by the Clyde Coal Company, to whom, Hill, trustee for himself, Browne, and one Foster, had conveyed the lands in question, with other lands.

Judge Shiras, who heard the case in the circuit court, made the following finding of facts and declarations of law: "(1) I find and hold that the contract or agreement in the bill described, entered into between John Browne, as agent for Edwin C. Litchfield, and Hamilton Browne, in pursuance of which the northeast quarter of section three, township eighty-four north, of range twenty-seven west of the fifth P. M., was in form conveyed to J. F. Collins, and the east half of the northwest quarter of said section was in form conveyed to James Taylor, and the west half of the northwest quarter of said section was in form conveyed to Joseph Stanford or Stanfield, was in fraud of the rights of said Edwin C. Litchfield; and, upon the discovery of the fraud practiced upon him, the said Litchfield had had the right, as against said John Browne and Hamilton Browne, to rescind the agreement made by his agent, and to avoid the deeds executed by said Litchfield as above stated. (2) I find that John Browne deceased January 20, 1882; that L. S. Rhoads, a clerk in the office of Edwin C. Litchfield, in New York, came at once to Des Moines, Iowa, as the representative and agent of Mr. Litchfield; that while at Des Moines he received the notes and mortgages executed by the grantees of the several parts of the north half of section three to secure the unpaid portions of the purchase price; that, immediately after the delivery of these notes and mortgages, the said Rhoads was informed that in fact Hamilton Browne was the real purchaser of these lands, and was informed by third parties that the lands were supposed to be coal lands, and that Hamilton Browne was dealing with them as coal lands; that in a month or six weeks thereafter said Rhoads returned to New York, and at once informed Edwin C. Litchfield of these facts, and delivered to him the money, notes, and mortgages given for the purchase of the several parts of said north half of section three. (3) I hold that the facts then communicated to Edwin C. Litchfield were sufficient to notify him that a fraud upon his rights had been committed, giving him the right to elect whether he would confirm the agreement made by his agent, waiving the fraud, or whether he would rescind the agreement made in his name, and avoid the deeds executed by him. And I further hold that it was the duty of Mr. Litchfield to exercise this right of election within a reasonable time; that, if he desired to obtain more full information of the actual character of the land before exercising his election, it was incumbent upon him to use reasonable diligence to procure such information. (4) I find that said Edwin C. Litchfield gave no intimation of a purpose to rescind the contract in question until the original bill was filed in this case, May 4, 1885; that is to say, until after the lapse of a period of three years and three months, or thereabouts, from the time he received information of the fraud committed against him. And I further find that during this period of time said Litchfield took no steps for ascertaining the actual character of the land in question, and that he retained in his possession the money, notes, and mortgages forming the contract price of the land. (5) I hold that the lapse of time is so great that it must be held that thereby said Edwin C. Litchfield signified his election to be to affirm the contract made by his agent. The situation was such as to require action on his part, if he wished to disaffirm the contract. When the purchase price of the lands, evidenced by the money, notes, and mortgages received by his

agent, Rhoads, was delivered to him in New York, he was then informed of the fraud practiced upon him. If he proposed to rescind the contract, he was not entitled to hold or use this purchase price. He knew that Hamilton Browne would not long remain the sole owner of these lands, and that the rights of third parties would soon become involved. Furthermore, even as to Hamilton Browne, he was under obligation to act with reasonable promptness. For a period of three years and three months he remained silent. He retained, without objection, the purchase price of the land. He permitted third parties to become interested in the property, and he permitted Hamilton Browne to expend money in further investigating the character of the coal deposits supposed to be upon the land. Such conduct is consistent with the idea that Litchfield did not intend to rescind the contract. It is inconsistent with the idea that he intended to rescind the same. His acts speak for him, and he is bound thereby. (6) I therefore hold that said Litchfield failed to exercise his rights to rescind the agreement for the conveyance of the lands in question, but, on the contrary, that he affirmed the same; and, having done so, he cannot subsequently reverse that election. (7) I further find that before the bill in this case was filed the realty had become the property of the Clyde Coal Company, by conveyances duly recorded in the recorder's office of the proper county; that said company was not made a party defendant until July, 1892,—more than ten years after the discovery of the fraud complained of by Litchfield, and more than seven years after the original bill was filed herein. (8) I hold that the defense of the statute of limitations pleaded on behalf of the Clyde Coal Company is sustained by the evidence, and is available to such defendant. (9) I further find that the delay of over three years in filing the original bill in this cause, and the further delay of seven years before making the said Clyde Coal Company a party defendant, constitutes laches on part of complainant, which, independent of the statute of limitations, is of such a character as to defeat recovery by complainant against said Clyde Coal Company. (10) I therefore hold that the bill must be dismissed, upon the merits, at the cost of complainant."

William G. Wilson and C. H. Gatch (William Connor and J. B. Weaver, Jr., on the briefs), for appellant.

W. A. Park and Homer C. Eller (F. W. Lehmann and W. E. Odell, on the briefs), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

After a careful reading and consideration of the evidence, we fully concur with the circuit court in its finding of facts, and in its declarations of law applicable thereto. Under the well-settled rules of law applicable to the facts of the case, Mr. Litchfield, by failing for more than three years after notice of the fraud to disaffirm the sales made by his agent, John Browne, to Collins, Stanfield, and Taylor, thereby ratified and confirmed the same, and is barred by his laches from recovering the lands from the present owner, or damages from Hamilton Browne and James J. Hill, or either of them, on account of the fraud practiced upon him in the original sale of the lands. The facts found bring the case directly within the doctrine laid down by this court in Rugan v. Sabin, 10 U. S. App. 519, 3 C. C. A. 578, 53 Fed. 415; Naddo v. Bardon, 4 U. S. App. 642, 2 C. C. A. 335, 51 Fed. 493; Lemoine v. Dunklin Co., 10 U. S. App. 233, 2 C. C. A. 343, 51 Fed. 487; Kinne v. Webb, 4 C. C. A. 170, 54 Fed. 34, 12 U. S. App. 137; Scheftel v. Hays, 58 Fed. 457, 7 C. C. A. 308; Wetzel v.

Transfer Co., 65 Fed. 23, 12 C. C. A. 490, and numerous cases therein cited. The doctrine of these cases has come to be common learning, and its restatement in this case would serve no useful purpose. Upon the authority of these cases, the decree of the circuit court is affirmed.