## STATE v. RED RIVER LUMBER COMPANY.[1]

November 26, 1909.

Nos. 16,393—(27).

### Sale of School Land — State Auditor's Certificate.

In an action by the state to recover damages for trespass, it is *held* that the state auditor's certificates of sale of the land upon which the alleged trespass was committed, being school land certificates and fair upon their face, cannot be collaterally impeached for fraud or mistake by extrinsic evidence.

### Statutory Decision as to Character — Impeachment.

The state auditor, as ex officio land commissioner, is authorized by statute to determine the character of the state's school lands, whether agricultural, timber, or mineral, and his determination thereof can be called in question, after a sale of the land based thereon, only in a direct proceeding brought for that purpose.

### Case Distinguished.

State v. Shevlin-Carpenter Co., 62 Minn. 99, distinguished.

[1]Reported in 123 N. W. 412.

Action in the district court for Clearwater county to recover $15,642, treble value of certain timber alleged to have been cut in the winter of 1903 and 1904 from school land owned by the state. The answer was a general denial. The case was submitted upon stipulated facts before McClenahan, J., who ordered judgment in favor of defendant. From the judgment entered pursuant to the order, plaintiff appealed. Affirmed.

*George T. Simpson*, Attorney General, and *C. S. Jelley*, for the State.

*C. J. Rockwood*, for respondent.

BROWN, J.

Action in trespass, brought under the provisions of chapter 163, p. 349, Laws 1895, to recover treble the value of certain timber, alleged to have been wilfully and unlawfully cut and removed from certain land belonging to the state. Defendant had judgment, and the state appealed.

The facts are as follows: The several tracts of land from which the timber was taken were a part of the state school lands, and had been determined by the state auditor, acting as land commissioner, and under the authority of the statutes of the state, to be agricultural land. Thereafter, in March, 1899, the auditor, in accordance with the statutes on the subject, offered the same for sale as agricultural land, and the several tracts were purchased by one E. W. Backus. Separate certificates of sale in due form were issued and delivered to Backus, each setting forth the sale, the quantity of land, the purchase price, the amount paid and remaining unpaid, and all other terms and conditions of the sale. Payments were subsequently made by Backus in accordance with the terms of the contract for the years 1899, 1900, and 1901, but none thereafter until January 26, 1907, some time after the commencement of this action, when all past-due amounts were paid to and received and retained by the state. The lands were not in fact agricultural in character, but, on the contrary, contained in the neighborhood of one million feet of timber, all of which was cut and removed during the winter of 1903 and

1904 by defendant Red River Lumber Company, "acting under the authority of said Backus."

It was stipulated by the parties on the trial below that all proceedings with reference to the sale of land to Backus by the state auditor were regular in form, and that the certificates of sale were valid unless, "because of the existence of said timber, * * * the state land commissioner was wholly without authority to make any sale." It was also stipulated that the certificates of sale have never been set aside, canceled, or forfeited, or the land subsequently offered at a resale; that the state has at all times retained the money paid by Backus towards the purchase price of the land, and has not offered to return any part thereof to him, nor in any manner sought to cancel the certificates; and, further, "that the officers and agents of the defendant * * * believed, when the timber mentioned * * * was cut, that [defendant] had the right to cut and remove such timber, and that such timber was cut and removed, relying upon the certificates of sale made by the state to Edward W. Backus, and relying upon the authority of said Backus, given to the defendant, and without any suspicion that the defendant had not a complete right to cut and remove the timber."

The state brought this action for wilful trespass, upon the theory that the sale of the land by the state auditor was without authority, in violation of the law, and that the certificates of sale are nullities, furnishing no protection to Backus or defendant. The trial court, on the facts stated, held that the certificates of sale, being valid on their face, could not be attacked collaterally, but only in a direct proceeding brought for that purpose, and ordered judgment for defendant. Though other questions are presented by the record, all depend upon this particular ruling, and, as our conclusion sustains that of the trial court, the opinion will be limited to a consideration of the contention, of the state that the court below was in error.

The matter of disposing of public land, both in federal and state governments, has since their organization been committed to particular officers or departments specially created for the purpose, with full power and authority, within prescribed limits, to act for and on behalf of the government in the determination of the matters essential

to the discharge of the duties imposed upon them. In the performance of these duties the officer or department acts in many respects in a quasi judicial capacity, and decisions made by them are, as a rule, not open to collateral attack, except in those cases where want of authority appears affirmatively upon the record. Their decisions in matters submitted to them may, of course, be called in question by direct proceedings for fraud or mistake; but in a collateral action their determination of questions of fact is conclusive, where lack of power does not affirmatively appear. 32 Cyc. 1040, et seq., and authorities cited. The rule applies to every question committed to them for decision, and where the right to sell a particular tract of land depends upon its character, whether agricultural, timber, or mineral, the department determination thereof is free from indirect assault. 32 Cyc. 1025; Williamson v. Baugh, 71 Ark. 491, 76 S. W. 423; Rood v. Wallace, 109 Iowa, 5, 79 N. W. 449; Johnson v. Bridal, 24 Ore. 182, 33 Pac. 528; U. S. v. Mackintosh, 85 Fed. 333, 29 C. C. A. 176.

Such is the law in this state. The state auditor is made by statute the land commissioner, and is authorized to make all sales of school lands within the limitations and restrictions expressly imposed. He is required to make diligent and thorough inquiry and examination into the character and value of all land owned by the state, and is prohibited from selling timber land except under certain conditions, and then only when expressly authorized by the state timber board, composed of the Governor, auditor, and state treasurer. Whenever, after an examination, he determines any particular tract of land to be chiefly valuable for timber, he is required to report the same to the timber board, and if in their opinion a sale thereof is necessary for the protection of the interests of the state, the sale may be made by the auditor; otherwise not. If he determines the land to be agricultural in character, he may sell the same without intervention by the timber board.

In the case at bar, the land in question was determined by the auditor to be agricultural in character, and it was sold as such. Within the rule referred to, the certificate of sale, which is evidence of the prior determination of the character of the land and all other

questions necessary to vest in the auditor the right to make the sale, if accorded the same effect as a patent, cannot be attacked in this action, one for trespass, and not expressly brought to set aside the sale. White & Street Townsite Co. v. J. Neils Lumber Co., 100 Minn. 16, 110 N. W. 371; O'Connor v. Gertgens, 85 Minn. 481, 89 N. W. 866; Little v. Williams (Ark.) 113 S. W. 340; State v. Morgan, 52 Ark. 150, 12 S. W. 243. The rule applies to the state, as well as to controversies between individuals. State v. Morgan, supra; Neff v. U. S., 165 Fed. 273, 91 C. C. A. 241; Chauvin v. Louisiana, 121 La. 10, 46 South. 38; U. S. v. Schurz, 102 U. S. 378, 26 L. Ed. 167. And it is not abrogated or changed by section 2425, R. L. 1905, which declares all sales of public land not in accordance with statutory requirements void and of no effect. If the invalidity of the sale appeared upon the face of the certificate, effect would be given the statute in any form of action; but it does not so appear in the case at bar, and the invalidity is made manifest only by extrinsic evidence to the effect that the auditor acted either fraudulently or negligently in determining the character of the land and making the sale. The rule against collateral attack, therefore, applies, unless the certificate of sale be held not within the rule as applied to patents. McKinney v. Bode, 33 Minn. 450, 23 N. W. 851; State v. Shevlin-Carpenter Co., 62 Minn. 99, 64 N. W. 81; U. S. v. Schurz, supra.

Upon this branch of the case counsel for the state contend that the certificate of sale should not be classified with patents, and, therefore, that the rule against collateral attack does not apply. In this we do not concur. The sale of school land in this state has always been in the form of executory contracts, evidenced by a certificate of sale, such as that involved in this case, which operates to transfer the equitable title to the purchaser, vesting in him, or his assignee, the right of possession and the use and enjoyment of the land. Wilder v. Haughey, 21 Minn. 101; McKinney v. Bode, 32 Minn. 228, 20 N. W. 94; Haaven v. Hoaas, 60 Minn. 313, 62 N. W. 110. These certificates are made assignable by statute (R. L. 1905, § 2422), and are entitled to record in the office of the register of deeds. They are similar to and of like force and effect as executory contracts for the

sale of land between individuals, and pass to the holder an interest in the land, which ripens into and entitles the certificate holder to a fee-simple title upon payment of the purchase price. They are issued upon the same formalities as patents, and in point of substance cannot be differentiated therefrom, in so far as concerns the rule against collateral attack. We so hold.

The case is unlike State v. Shevlin-Carpenter Co., supra. A permit to cut and remove timber from certain pine land was held in that case open to collateral attack; but the decision was placed squarely on the ground that the auditor was "absolutely without any jurisdiction or authority to sell the timber," and this want of authority appeared affirmatively upon the record. That conclusion was entirely right under our statutes, for the sale of pine timber rests entirely with the timber board. Without special authorization from that body, the state auditor can make no disposition whatever of the state's timber, and an attempted sale by him is of no force or validity. Not so, however, as to agricultural land, with the sale of which the timber board is not concerned. After determining the character of the land as agricultural, the auditor has sole jurisdiction to sell the same. The auditor so determined in this case, which determination, within the authorities cited, is conclusive against collateral attack. Steel v. Smelting Co., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; Saunders v. La Purisima, 125 Cal. 159, 57 Pac. 656.

Though there was manifest error in the determination of the character of the land in question, that fact furnishes no reason for departing from the well-established rule against collateral attack. The proper form of action in cases of this kind is that adopted in the case of U. S. v. Detroit Timber & Lumber Co., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499, namely, one to set aside the certificate and for an accounting for timber taken.

It follows that the trial court rightly held that the certificates were not open to collateral attack, and the judgment appealed from is affirmed.