ALASKA CENT. RY. CO. v. DOOLEY et al.

(Third Division.    Seward.    August 24, 1910.)

No. 193.

1. PUBLIC LANDS (§ 113*)—HOMESTEADS—UNAUTHORIZED RESERVA-
TION IN PATENT.

The United States issued a patent to Ballaine for a home-
stead entry fronting on Resurrection Bay, an arm of the sea,
and therefore navigable waters.  A clause was inserted in the
patent providing that "a roadway 60 feet in width, parallel
to the shore line as near as may be practicable, shall be reserved
for the use of the public as a highway."  The land was con-
veyed by Ballaine to the plaintiff railroad company.  The de-
fendants entered upon the strip reserved for a roadway in
the patent, and constructed and occupied dwelling houses there-
on.   The plaintiff brought this suit for restitution.  *Held*, the
proviso in section 10 in the act of Congress, entitled "An act
extending the homestead laws and providing a right of way
for railroads in the district of Alaska, and for other purposes,"
approved May 14, 1898 (Act May 14, 1898, c. 299, 30 Stat. 413
[U. S. Comp. St. 1901, p. 1469]), providing for the reservation
of a roadway, has no reference to patents for homesteads in
Alaska; that the plaintiff is the owner of the strip of land,
and the reservation in the patent is void.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §
313;  Dec. Dig. § 113.*]

2. EJECTMENT (§ 9*)—RAILROAD RIGHT OF WAY—TITLE TO SUPPORT
ACTION.

A grant of a railroad right of way is a sufficient title and
possession upon which to base an action in ejectment.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§
16–29;  Dec. Dig. § 9.*]

3. PUBLIC LANDS (§ 92*)—RAILROADS—RIGHT OF WAY.

By Act June 30, 1906, c. 3921, 34 Stat. 798, Congress granted
to the Alaska Central Railroad Company a right of way along
the navigable waters in Alaska, and a special right of way over
any roadway along the waters of Resurrection Bay.  *Held*, the
first part of the grant is one in futuro, depending upon the lo-
cating of the right of way and the ascertainment of its neces-
sary nearness to the navigable waters for efficient construction
and operation, but the grant on Resurrection Bay and upon
any roadway established along the shore was a grant in præ-
senti.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§
276–282;  Dec. Dig. § 92.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

The plaintiff complains of the defendants, John Dooley and others, alleging its corporate existence under the laws of the state of Washington and its compliance with the laws of Alaska, authorizing it to do business therein; that it is engaged in constructing a railroad from Seward, Alaska, into the interior of that territory; that it is the owner of a right of way on the shore line of Resurrection Bay therein, under the act of June 30, 1906; that it is the owner in fee and entitled to the immediate possession of certain lands at the head of said bay described in the complaint, including all upland above ordinary high tide below or in front of the meander line, all of which land·is alleged to be necessary for railroad tracks and wharves of the plaintiff; that the defendants have wrongfully entered upon these described premises, built houses thereon, and wrongfully withheld possession from the plaintiff, to its damage in the sum of $500. Plaintiff prays judgment for restitution of said damages and costs.

The defendants, Dooley, Waters, Baldwin, Armstrong, and Eick, by their answer admit the incorporation of the plaintiff; that it is engaged in constructing a railroad from Seward to the interior of Alaska. They deny that by the act of Congress of June 30, 1906, plaintiff has any title, right of possession, or right of way upon the land described in plaintiff's complaint or any part thereof; they admit that the plaintiff is the owner of the land described, except that portion thereof lying within 60 feet of the mean high tide of Resurrection Bay; the title and right thereto they deny being in the plaintiff, except that enjoyed in common with the general public as a public highway. Defendants allege affirmatively that by the act of Congress of May 14, 1898, this strip above mean high tide was reserved for perpetual public highway; they allege a usage and consent on the part of ·the federal government since said act permitting residents of the territory to occupy portions of said strip in any manner not impairing the use as a public highway, under which usage and license defendants claim to occupy small portions of said strip as sites for cabins in which to reside, and for no other purpose. They allege it does not interfere with its use as a public high-

way, and allege that no suit has been brought by the federal government for its recovery. They pray that the action be dismissed.

A demurrer of the plaintiff to the answer having been overruled, the cause was by stipulation of counsel, in open court, tried to the court, without a jury.

There is no evidence on the part of the plaintiff of any actual damage. There is no evidence on the part of the defendants of any license, usage, or custom permitting the occupancy by residents of Alaska of such strip. Maps were introduced showing the location of the lands on Resurrection Bay, a navigable arm of the ocean on which is situated the town of Seward, Alaska, the patent of the United States to plaintiff's grantors, together with their deed to the railroad company of the land described in the complaint. The questions presented are mainly, if not entirely, questions of law.

S. O. Morford, of Seward, for plaintiff.

Edmund Smith and E. E. Ritchie, both of Valdez, for defendants.

CUSHMAN, District Judge. Section 1 of the act of May 14, 1898 (30 Stat. 409), provides:

"That the homestead land laws of the United States * * * are hereby extended to * * * Alaska: * * * Provided, that no entry shall be allowed extending more than eighty rods along the shore of any navigable water, and along such shore a space of at least eighty rods shall be reserved from entry between all such claims, and that nothing herein contained shall be so construed as to authorize entries to be made, or title to be acquired, to the shore of any navigable waters within said district."

It was further provided that no homestead shall exceed 80 acres in extent.

Section 2 of said act provides:

"That the right of way through the lands of the United States in the district of Alaska is hereby granted to any railroad company, duly organized under the laws of any state or territory or by the Congress of the United States, which may hereafter file for record with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the centre line of said

road. * * * And when such railway shall connect with any navigable stream or tide water such company shall have power to construct and maintain necessary piers and wharves for connection with water transportation, subject to the supervision of the Secretary of the Treasury: Provided, that nothing in this act contained shall be construed as impairing in any degree the title of any state that may hereafter be erected out of said district, or any part thereof, to tidelands and beds of any of its navigable waters, or the right of such state to regulate the use thereof, nor the right of the United States to resume possession of such lands, it being declared that all such rights shall continue to be held by the United States in trust for the people of any state or states which may hereafter be erected out of said district. The term 'navigable waters,' as herein used, shall be held to include all tidal waters up to the line of ordinary high tide and all nontidal waters navigable in fact up to the line of ordinary high-water mark."

Section 10 of this act touching the location of trade and manufacturing sites provides:

"That no entry shall be allowed under this act on lands abutting on navigable water of more than eighty rods: Provided further, that there shall be reserved by the United States a space of eighty rods in width between tracts sold or entered under the provisions of this act on lands abutting on any navigable stream, inlet, gulf, bay or seashore, and that the Secretary of the Interior may grant the use of such reserved lands abutting on the water front to any citizen or association of citizens, or to any corporation, incorporated under the laws of the United States or under the laws of any state or territory, for landings, and wharves, with the provision that the public shall have access to and proper use of such wharves, and landings, at reasonable rates of toll to be prescribed by said Secretary, and a roadway sixty feet in width, parallel to the shore line as near as may be practicable, shall be reserved for the use of the public as a highway."

The patent from the government to plaintiff's grantor, dated the 1st day of May, 1905, which included all of the lands in controversy, contains the following reservation:

"There is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States, and a roadway sixty feet in width parallel to the shore line as near as may be practicable shall be reserved for the use of the public as a highway."

By warranty deed, on the 15th day of June, 1905, the patentee deeded all of the lands without reservation to the plaintiff.

By the act of June 30, 1906, entitled "An act to extend the time for the completion of the Alaska Central Railway, and for other purposes," the time for completing the Alaska Central Railway was extended and the powers of the company enlarged, allowing the company three years from the passage of the act to file a map of definite location. It is further provided that:

"Said company shall have the right to locate its right of way along the navigable waters of Alaska and as near thereto as may be necessary for the safe, economical, and efficient construction and operation of its line of railway, any restriction, condition, reservation, or easement provided in, by, or under any act of Congress to the contrary notwithstanding, and the right of way for its railway is granted to said company on Resurrection Bay and at such other points as it may be found desirable to establish terminal facilities on, over, along, and across any roadway established along the shores of navigable waters under the Act of Congress of May 14, 1898. * * * Nothing herein contained shall be taken as vacating or impairing the reserved shore roadway and riparian rights provided for under the said act approved May 14, 1898."

The defendants' contention is that a roadway, 60 feet in width, with the shore line of Resurrection Bay for its water boundary, is established, by operation of law, across the lands of the plaintiff described in the complaint, and that the holdings of the defendants are within such roadway, and all within the exterior limits of the land patented to plaintiff's grantor and by him deeded to the plaintiff.

The act of 1906, supra, in substance gives the plaintiff the right to locate its right of way along the navigable waters as near as necessary. The part of the grant so providing is a grant in futuro, depending upon the locating of the right of way and the ascertainment of its necessary nearness to the navigable water for efficient construction and operation. But the grant of a right of way to plaintiff on Resurrection Bay upon any roadway established along the shores was in præsenti.

If by operation of law and the reservation in the patent a roadway 60 feet wide, with the shore line of Resurrection Bay as a water margin was established, then the act of 1906 was a present grant to the plaintiff of a right of way over such

established roadway on Resurrection Bay, and the plaintiff should recover, although the right of way may be an easement over the roadway as against these defendants, who seek to occupy it for residence purposes and in no way base their claim upon a right, as members of the public, to use it as a roadway. 7 Encyclopedia of Pleading & Practice, 267 et seq., and cases cited. There may be reasonable grounds for those cases holding that an ordinary easement or a mere right of passage and nothing more has not enough of the quality of title to the land and the right of possession to maintain eject-ment, but the reasoning upon which such decisions are based has no application in the case of a railroad right of way or right to erect a milldam or similar cases, where there is a right to continue and maintain, with sufficient possession for that purpose, permanent structures, such as railroad tracks in the roadway or a dam in the stream.

Even if it were conceded that the right to establish a road-way 60 feet in width, parallel to the shore line, as near as practicable, over the land patented to plaintiff's grantor, were reserved, but not yet fixed, defined, and established, it would merely constitute a float, and plaintiff's title and the right to present possession of all the land within the exterior limits of its deed would be complete and the reservation for a roadway dependent upon the condition subsequent of the ascertainment of the nearest practicable course parallel to the shore line. The burden is upon the defendants to show that they come within the reservation. This they have not done, for even were it to be conceded, which it is not, that no definite action by the Secretary of the Interior or other public authority to fix and establish the course and boundaries of the roadway was necessary, but that this was a matter falling within the rule that that is certain which can be made certain, yet the burden of making it appear certain to the court that the possessions held by the defendants against plaintiff are within the limits of a 60-foot strip, the nearest practicable roadway parallel to the shore line, has not been sustained by proof nor at-tempted, other than that above recited.

Aside from the foregoing, the court is of the opinion that

the reservation in the homestead patent to plaintiff's grantor, Frank L. Ballaine, of a roadway, is without any authority of law and of no effect.

Section 1 of the act of May 14, 1898, making provision for homesteads in Alaska, defines the restrictions concerning the same, namely "no homestead shall exceed eighty acres, nor extend more than eighty rods along the shore of any navigable water and along such shore, at least eighty rods shall be reserved from entry between such claims," and "nothing herein contained shall be construed to authorize the entry or acquiring of title to the shore of any navigable water." There is nothing in this section regarding a reservation for a roadway. The homestead entry may extend 80 rods along the shore, but it cannot include any part of the shore. This implies that it should reach the shore with no intervening tract. All of the shore is below the line of ordinary high tide, above which it is conceded that both plaintiff and defendants claim. 25 Encyclopedia of Law (2d Ed.) 1059 and 1060.

The language in the act regarding a reserved 60-foot roadway is found in the tenth section, the subject of which concerns grants for trading and manufacturing sites and other purposes more likely to be situated at or near towns and cities on navigable water, where ready access by the public to the shore of such waters is of greater importance than the case of an ordinary homestead. The following provision is found in this section:

"Provided, further, that there shall be reserved by the United States a space of eighty rods in width between tracts sold or entered under the provisions of this act on lands abutting on any navigable stream, inlet, gulf, bay, or seashore, and that the Secretary of the Interior may grant the use of such reserved lands abutting on the water front to any citizen or association of citizens, or to any corporation incorporated under the laws of the United States or under the laws of any state or Territory, for landings, and wharves, with the provision that the public shall have access to and proper use of such wharves, and landings, at reasonable rates of toll to be prescribed by said Secretary, and a roadway sixty feet in width, parallel to the shore line as near as may be practicable, shall be reserved for the use of the public as a highway."

The construction of this provision, section, and the whole act clearly shows that the roadway authorized is only over

those lands "eighty rods in width" or "at least eighty rods along such waters" to be reserved by the Secretary between tracts either "sold or entered" under this act, and that it is not a roadway to be reserved across either homesteads or trading and manufacturing sites. The clause in the provision made for a reserved roadway is limited to the proviso in which it is found. This proviso authorizes the Secretary to "grant the use of such reserved lands abutting on the water front * * * for landings, wharves," etc. Then follows the general provision, "the public shall have access" to such landings, wharves, etc. Then, as a means of partly insuring this access to the public, follows a specific provision for a "roadway sixty feet in width, parallel to the shore line, as near as may be practicable, shall be preserved for the use of the public as a highway." It is reasonable to presume that it was intended that such highway would ordinarily be located immediately in the rear of those reserved lands abutting on the water front, the use of which was to be granted by the Secretary for landings, wharves, etc.

The United States or the public are in no way a party to this suit, and, if it were not perfectly clear to the court that the foregoing construction was the only reasonable one, the court would not willingly undertake to pass upon these questions, in the absence of representation on the part of the public, but as the defendant in an ejectment suit is not compelled to show right in himself, but may show title and right of possession in a stranger to defeat the plaintiff, the court has felt warranted in passing upon all of the contentions raised.

Let findings and judgment be prepared for the plaintiff.