## HENRY HUGHES v. FRED THORNTON AND STATE OF MINNESOTA.[1]

May 18, 1923.

No. 23,481.

Reservation of mineral rights in conveyance of land.

1. The owner may convey his land and retain the mineral rights therein.

Reservations in patents of state school lands unauthorized.

2. The state land commissioner is authorized to sell school lands only in the manner directed by law, and is without power to insert reservations or exceptions not authorized by law in the patents issued pursuant to such sales.

Reservations in patent void.

3. The reservations in the patent in question were inserted without authority of law and are void.

In proceedings to register title to certain lands in Itasca county, the state answered claiming rights in the minerals therein. The case was submitted on an agreed statement of facts to McClenahan, J., who made findings and ordered judgment in favor of plaintiff. From the order for judgment, the state appealed. Affirmed.

*Clifford L. Hilton,* Attorney General, and *Egbert S. Oakley,* Deputy Attorney General, for appellant.

*Willard A. Rossman,* for respondent.

[1]Reported in 193 N. W. 723.

TAYLOR, C.

Plaintiff instituted proceedings under the so-called Torrens law to register his title to a 5-acre tract of land in Itasca county. The state interposed an answer asserting title to the minerals in the land. The trial court found that the state had no claim to the land or the minerals and the state appealed.

The case was submitted to the court on an agreed statement of facts in which it was admitted that the land in controversy is part of a tract of school land which was sold by the state land commissioner to Charles Kearney November 11, 1890; that a certificate of sale of the usual form was issued to Kearney upon the face of which was written in red ink the words: "All mineral rights reserved;" and that pursuant to this certificate a patent of the usual form was duly issued to Kearney October 4, 1894, across the face of· which were written in red ink the words: "All mineral rights reserved to the state."

That a grantor when making a sale and conveyance of land may except therefrom and reserve and retain what are commonly termed the "mineral rights" is well settled. Buck v. Walker, 115 Minn. 239, 132 N. W. 205, Ann. Cas. 1912D, 882; Washburn v. Gregory Co. 125 Minn. 491, 147 N. W. 706, L. R. A. 1916D, 304. That the reservation here involved is sufficient in form is not questioned in this case. The contention is that the reservation is void because made by the land commissioner without authority of law.

The law under which this sale was made is found in title 1 of chapter 38 of the General Statutes of 1894, which is title 1 of chapter 38 of the General Statutes of 1878 with various amendments and additions thereto, all of which were made prior to 1890, the date of this sale. The statute provides that the land commissioner

"Shall have general charge and supervision of all lands belonging to the state * * * and may superintend, lease, sell, and dispose of the same in such manner as shall be directed by law." G. S. 1894, § 3959.

School lands can be sold only at public sale in the county in which the lands are situated and for not less than the minimum price per

acre fixed by statute. Notice of the time and place of sale must be given by publication, and not more than ...................'.......... acres may be sold in any one year. Const. art. 8, § 2; G. S. 1894, §§ 3965, 4002, 4003. The commissioner may subdivide a tract into lots or small parcels if he deems it for the interest of the state, but all sales of lands not so subdivided

"Shall be made according to the subdivision thereof by the United States surveys." G. S. 1894, §§ 3975, 3988.

"In case of any sale made by mistake, or not in accordance with law, or obtained by fraud, the same shall be void, and the certificate of purchase issued thereon shall be of no effect." G. S. 1894, § 3986.

At the time of the sale

"The commissioner shall make out and deliver to the purchaser thereof a certificate, in which the said commissioner shall certify the description of the lands sold, the quality thereof, and the price per acre, the consideration paid and to be paid therefor, and the time and terms of payment." G. S. 1894, § 3967.

The Governor shall issue a patent whenever a certificate of sale is presented to him with a certificate of the commissioner indorsed thereon that all amounts due on the land have been paid, and that the holder of the certificate is entitled to a patent of the lands described therein. G. S. 1894, § 3971.

It will be seen from an examination of the statute that the legislature provided for an absolute sale in fee, and did not authorize or contemplate the reservation of an interest of any sort in the land so sold. The statute prescribed what the contract of sale should contain and it was beyond the power of the commissioner to add to the contract other provisions not authorized by the statute and differing in substance from those prescribed.

In Wright v. Burnham, 31 Minn. 285, 17 N. W. 479, the land commissioner had made a conditional sale of certain school and internal-improvement lands, the sale to be effective if a certain suit then pending concerning the lands was decided in favor of the state, but to be ineffective if the suit was decided against the state. The suit

was decided in favor of the state, but the court held the sale void for the reason that the law did not authorize conditional sales. The syllabus reads:

"The law does not authorize the school and internal-improvement lands of the state to be disposed of, except by absolute sale as prescribed by statute. A *conditional* sale is unauthorized and void."

Chapter 22 of the Laws of 1889 authorized the land commissioner to issue leases for the mining of iron ore on lands belonging to the state. Section 9, p. 72, of this act provided:

"Whenever state lands situated in the counties of St. Louis, Lake and Cook are sold, for which contracts or patents are issued, it shall be proper for the land commissioner of the state land office to indorse across the face of such contracts or patents the following words: 'All mineral rights reserved to the state.' The effect of such indorsement shall be to reserve to the state all mineral rights."

This section is the only statutory provision authorizing the reservation of mineral rights in the sale of state lands enacted prior to the patenting of the land in controversy, and it is conceded that this provision did not apply to this land for the reason that the land is not within either of the designated counties. Statutes subsequently enacted reserve to the state all valuable minerals in state lands and provide that certificates of sale and patents shall state that all such minerals are reserved by the state for its own use, but it is conceded that these statutes are not retroactive and have no bearing on the present case. It is conceded that this land was sold, paid for in full and patented to the purchaser before the legislature had authorized the reservation of mineral rights in any lands lying outside of St. Louis, Lake or Cook counties.

The authority and discretion given by the state laws to the state land commissioner in respect to lands belonging to the state is certainly no greater than the authority and discretion given by the Federal laws to officials of the Federal land department in respect to lands belonging to the United States. In Deffebach v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. ed. 423, the court, answering a

claim that a patent issued under the mining laws should have excluded from its operation buildings and improvements previously made under the townsite laws, said [at page 406]:

"The land officers, who are merely agents of the law, had no authority to insert in the patent any other terms than those of conveyance, with recitals showing a compliance with the law and the conditions which it prescribed."

In Davis' Adm'r v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, 35 L. ed. 238, the defendant claimed under a patent issued under the townsite laws which contained a provision excepting mines and valid mining claims. Lands known to contain valuable minerals were not subject to entry under the townsite laws. The plaintiff claimed under a subsequent patent issued under the mining laws which contained a provision excepting all town property rights on the surface and all buildings and structures on the surface not belonging to the patentee. In discussing the claim that the mining patent excluded from the grant the town lots on the surface, the court said [at page 52]:

"We do not attach any importance to the exception, for the officers of the land department, being merely agents of the government, have no authority to insert in a patent any other terms than those of conveyance with recitals showing compliance with the conditions which the law prescribes. Could they insert clauses in patents at their own discretion they could limit or enlarge their effect without warrant of law. The patent of a mining claim carries with it such rights to the land which includes the claim as the law confers, and no others, and these rights can neither be enlarged nor diminished by any reservations of the officers of the land department, resting for their fitness only upon the judgment of those officers." Citing Deffebach v. Hawke, supra.

The following cases are to the same effect: Sullivan v. Iron Silver Mining Co. 143 U. S. 431, 12 Sup. Ct. 555, 36 L. ed. 214; Shaw v. Kellogg, 170 U. S. 312, 18 Sup. Ct. 632, 42 L. ed. 1050; Burke v. Southern Pac. R. Co. 234 U. S. 669, 34 Sup. Ct. 907, 58 L. ed. 1527;

Alaska Central Ry. Co. v. Dooley, 4 Alaska 184; Innerarity v. Heirs of Mims, 1 Ala. 660. Burke v. S. P. R. Co. supra, involved a patent to the railroad company for a large quantity of land in which the following clause had been inserted:

"Excluding and excepting all mineral lands should any such be found in the tracts aforesaid."

In an opinion which contains an exhaustive review of the prior decisions, the court held that the exception was void and that the patent passed the title to the land. One of the questions presented was whether the fact that the mineral exception clause was inserted under and pursuant to an agreement between the company and the officials of the land department estopped the company from denying its validity. The court said [234 U. S. 709]:

"It is urged that the railroad company accepted the patent with the mineral-land exception therein and also expressly agreed that the latter should be effective as one of the terms of the patent, and so is bound by it or at least estopped to deny its validity. There are insuperable objections to this contention. The terms of the patent whereby the government transfers its title to public land are not open to negotiation or agreement. The patentee has no voice in the matter. It in no wise depends upon his consent or will. He must abide the action of those whose duty and responsibility are fixed by law. Neither can the land officers enter into any agreement upon the subject. They are not principals, but agents of the law, and must heed only its will." (Citing cases.) "Nor can they indirectly give effect to what is unauthorized when done directly. Of course, if they enter into any forbidden arrangement whereby public land is transferred to one not entitled to it the patent may be annulled at the suit of the Government, but they cannot alter the effect which the law gives to a patent while it is outstanding."

In McKinney v. Bode, 33 Minn. 450, 23 N. W. 851, a certificate of sale had been issued for a tract of school land and a patent had been issued to an assignee of the certificate. The patent was attacked on the ground that the assignment of the certificate by the original

purchaser was void having been made directly to his wife, and on the further ground that it had been issued without a compliance with the statutory prerequisites. The court held the patent to be conclusive evidence of the legal title, saying [33 Minn. 453]:

"It cannot be avoided (in a collateral action, at any rate) for irregularities in the conduct of those who are appointed by the government to supervise the progressive course of a title from the commencement to its consummation in a patent." (Citing cases.) "It is conclusive proof of the act of granting by the state. U. S. v. Arredondo, supra. But it may be defeated, even in an action at law, by showing want of title in the state, or absolute want of power in the officers to issue it."

In State v. Red River Lumber Co. 109 Minn. 185, 123 N. W. 412, the commissioner sold a tract of school land as agricultural land and issued the usual certificate therefor. The land was in fact timber land and the purchaser or his assignee cut and removed the timber. The state brought an action in trespass. The court held that the action would not lie for the reason that it was the duty of the commissioner to determine what lands were agricultural and what were timber; that selling this tract as agricultural land was a determination that such was its character, and that, as the commissioner had authority to sell agricultural land, the sale could be attacked only in a direct proceeding to set it aside. The case of State v. Shevlin-Carpenter Co. 62 Minn. 99, 64 N. W. 81, was distinguished on the ground that that case involved a permit to cut timber and that the commissioner "was 'absolutely without any jurisdiction or authority to sell the timber,' and this want of authority appeared affirmatively upon the record." The court held in the Shevlin case that the timber permit was utterly void for want of power in the commissioner to issue it.

The Federal decisions hold squarely that an exception or reservation inserted in a patent by the officers of the land department without statutory authority therefor is void for lack of power in such officers to create reservations or exceptions, and that the patent takes effect the same as if such void provision had not been inserted

therein. The decisions of this court, so far as they pass upon analogous questions, are to the same purport. No decisions holding otherwise have been cited, and we have found none. In selling lands belonging to the state and issuing patents therefor, the officers are merely agents of the state and have those powers, and only those powers, given them by law. The power to issue a patent does not authorize them to insert conditions, reservations or exceptions therein unless such conditions, reservations or exceptions are authorized by law. The force and effect of a patent is fixed and determined by law, and its effect and the rights conferred by it can neither be extended nor limited by the action of the officers issuing it.

We concur in the conclusion of the learned trial court that the reservation in question was made without authority of law, and is void for lack of power in the officers to make it.

The judgment is affirmed.

HALLAM, J. (dissenting.)

I cannot assent to the proposition that, because a state land commissioner sells a partial interest in state land, when he is authorized only to make a sale of the whole, his act must operate as a conveyance of that which he did not intend to sell and the purchaser did not intend to buy. The state land commissioner intended to sell, and the purchaser intended to buy, the surface land without the mineral under the surface. If, as the opinion holds, this manner of sale was not in accordance with law, then under the express terms of the statute, G. S. 1894, § 3986, the sale was "void," and the certificate of purchase issued thereon is "of no effect," and this court plainly so held in Wright v. Burnham, 31 Minn. 285, 17 N. W. 479. The Federal decisions cited in the opinion are, in my opinion, not in point. The general statutes of Congress, in respect to homestead, pre-emption and other locations, determine the rights of the parties. Those rights accrue under the statutes long before the issuance of a patent. The person or corporation availing himself of these general statutes becomes the equitable owner before issuance of a patent, if all requirements of the law are complied with. Doran v.

Kennedy, 122 Minn. 1, 141 N. W. 851. The land department, in issuing a patent, acts in a ministerial capacity and is powerless to change the legal rights of the parties. The court made this clear in Shaw v. Kellogg, 170 U. S. 312, 338, 18 Sup. Ct. 632, 42 L. ed. 1050, cited in the opinion, where the court said of the case before it, that the land department "could not deal with the land as an owner and prescribe the conditions upon which title might be transferred. It was agent and not principal. Congress had made a grant, authorized a selection within three years, and directed the surveyor general to make survey and location, and within the general powers of the land department, it was its duty to see that such grant was carried into effect and that a full title to the proper land was made." In sales of state land under our statutes, the land commissioner initiated the transaction and negotiated the sale. No rights were acquired except through such negotiation and if such negotiation were void no rights were acquired at all.

I am not myself of the opinion that this sale was void. I think it should be held as a valid sale of what the parties intended should be sold.

BROWN, C. J. (concurring in dissent.)
I concur in the view of Justice Hallam.