BENJAMIN F. NELSON and Others v. CHARLES BETCHER LUMBER
COMPANY.[1]

October 27, 1905.

Nos. 14,392—(10).

**Former Decision.**

A decision on a former appeal reviewing a former trial of an action
is the law of the case on an appeal reviewing a second trial, if the evi-
dence was the same on both trials; but, if it was not, the former decision
is the law of the case only so far as it is applicable to the facts developed
on the 'second trial. ·

**Log Scale.**

In this, an action to recover the purchase price of logs, it is *held* that
the finding and decision of the trial court, to the effect that the parties
did not agree that the scale of the logs by the surveyor general should
conclusively bind the parties as to the quantity of logs delivered, are
sustained by the evidence.

Appeal by plainiffs from an order of the district court for Goodhue
county, Williston, J., denying a motion for a new trial. Affirmed.

*John R. Van Derlip* and *Wilson & Van Derlip,* for appellants.

*Albert Johnson,* for respondent.

START, C. J.

Action to recover $4,004.07, the alleged unpaid balance of the pur-
chase price of a quantity of saw logs, marked "Crab W," sold by the
plaintiffs to the defendant. The cause was tried by the court without
a jury, and judgment directed for the plaintiffs for $2,705.76, with
interest, and they appealed from an order denying their motion for a
new trial.

The complaint alleged, with other matters, that on August 18, 1900,
the plaintiffs, by Messrs. Walker & Akeley, sold to the defendant one
million feet, more or less, of logs, the exact quantity thereof to be
determined by the boom scale thereof at St. Paul, and there delivered;
that the defendant agreed to pay for the logs so scaled and delivered
at the rate of $13 per thousand feet according to the boom scale thereof

[1] Reported in 104 N. W. 833.

at St. Paul; that the logs were duly scaled and delivered at such boom, pursuant to the contract; that the quantity of logs so scaled and delivered was 1,060,420 feet according to the boom scale thereof at St. Paul; and, further, that the defendant has paid only $9,781.39 of the purchase price of the logs.

The answer alleged that on August 18, 1900, the defendant entered into a verbal contract with Walker & Akeley whereby they sold and agreed to deliver to the defendant at the St. Paul boom one million feet of logs, to be correctly scaled, at $13 per thousand feet; that pursuant to the contract there was delivered to the defendant at the St. Paul boom 910,940 feet of logs, and no more; and that the defendant has paid thereon $9,781.39. The answer, except as admitted, denied the allegations of the complaint.

The trial judge found, in effect, the following facts, namely: That on August 21, 1900, said plaintiffs sold to said defendant one million feet of "Crab W" logs, to be delivered by the plaintiffs to the defendant at the St. Paul boom, there to be scaled and delivered to said defendant. That there was not at any time any contract, stipulation, or agreement, made or existing by or between plaintiffs and defendant, that the scale of the logs made by the deputy scalers or by the surveyor general of logs and lumber for the Second lumber district of this state should be binding or conclusive upon plaintiffs or defendant. That the logs were scaled at the St. Paul boom by deputies of the surveyor general of logs and lumber in the manner usually adopted by deputy surveyors in scaling logs, but by reason of then existing conditions at such boom it was practically impossible to make a reasonably accurate survey or scale of the logs. The defendant, upon the arrival of the logs at its mill in the city of Red Wing and after it commenced to saw them, had good reason to believe and did believe that the scale of logs at the St. Paul boom was grossly inaccurate, and so informed the plaintiffs and demanded a rescale of the logs. Thereupon, at the request of the defendant, the plaintiffs not consenting, the surveyor general sent his deputies to Red Wing and a rescale of the logs was then made by them. The scale of the logs at the St. Paul boom showed that there were 1,060,420 feet of logs delivered to the defendant, but such scale was not correct. The correct quantity of logs so delivered was 960,050 feet, and no more, or 100,370 feet less than the amount

claimed by the plaintiffs. It was admitted that the boom scale at St. Paul was the scale made by the surveyor general.

The decisive question raised by the assignments of error is, what was the contract of the parties in regard to determining the quantity of the logs? The contention of the plaintiffs, briefly stated, is that the evidence conclusively shows that the parties agreed to abide by the boom scale at St. Paul, and that there was no difference between the testimony of the plaintiffs and the defendant as to the fact claimed. If this contention be correct, it follows that the order appealed from must be reversed; for it was so held on the former appeal herein. 88 Minn. 517, 93 N. W. 661.

But is the contention correct? The first trial of the cause was by the court without a jury, and the evidence of the defendant, tending to show the actual quantity of logs delivered, was excluded, and findings of fact made to the effect that the contract of the parties was as alleged in the complaint, and judgment directed for the full amount claimed by plaintiffs. The defendant made a motion for a new trial, which was granted, and the plaintiffs appealed from the order. This court affirmed the order, and held that the scale of the surveyor general at the St. Paul boom was only prima facie correct; that the court would not be warranted in giving greater effect to the scale made by him than is given by the statute (G. S. 1894, § 2397), unless the parties stipulated in their contract that the scale should be conclusive and final as to the quantity of logs, or the intention so to do fairly appeared from the terms of the contract. It was further held upon the record then before the court that there was no stipulation in the contract of the parties that the scale made by the surveyor general at the St. Paul boom should be final; nor was the agreement between them such as to warrant the inference that they intended to be bound thereby. 88 Minn. 517, 523, 93 N. W. 661.

The plaintiffs' contention on the former appeal was, as here, that the uncontradicted evidence conclusively showed that the parties agreed to abide by the boom scale at St. Paul. The court, as we have stated, held otherwise. The decision on the former appeal, however, would not bind the parties on this appeal, unless the evidence on both trials was the same. The rule in such cases is that a decision on a former appeal reviewing a former trial of an action is the law of the case on

an appeal reviewing a second trial, if the evidence was substantially the same on both trials; but, if it was not, the former decision is the law of the case only so far as it is applicable to the facts developed on the second trial. McNamara v. Pengilly, 64 Minn. 543, 67 N. W. 661.

We assume for the purposes of this appeal, the correctness of plaintiffs' claim that the evidence as to the contract was not the same on both trials, and inquire whether the evidence on the trial now under review was conclusive that the parties by their contract agreed that the quantity of logs should be determined by the surveyor's scale at the St. Paul boom.

There were three men present when the contract was made; Mr. Walker and Mr. Nelson representing the plaintiffs, and Mr. Betcher acting for the defendant. It is admitted by all of them that the plaintiffs wanted the logs scaled at Minneapolis, but the defendant insisted that they should be scaled at St. Paul boom, and that finally the parties so agreed. Mr. Walker and Mr. Nelson each testified in effect that the contract was that the defendant should pay $13 per thousand for the logs according to the boom scale at St. Paul. On the other hand, Mr. Betcher testified, on his direct examination, to the effect that the contract was that the defendant should pay $13 per thousand for the logs, that they were to be scaled at the St. Paul boom, that the correctness or incorrectness of the scale was not mentioned, that the only question was where the logs could be scaled to the best advantage, that he contended that if they were scaled in Minneapolis there would be serious delay in getting them out, and that it was then agreed that they should be scaled in St. Paul. Upon his cross-examination he testified in part as follows:

Q. Now, it is a fact, is it not, that these logs, when you purchased them in August, 1900, it was agreed between you and Mr. Nelson that they should be sent down to St. Paul and that you should pay for them $13 per thousand according to the boom scale as they were run out of the boom for brailing? A. $13 a thousand was the price. Q. According to the boom scale as they were being run out of the boom for brailing. Isn't it true your conversation and agreement was you were to pay $13 a thousand according to the St. Paul boom scale? A. Yes, sir.

Q. As they were turned out to be brailed? A. You are adding something. Q. The conversation was you were to pay for them according to the St. Paul boom scale? A. What is the difference. Q. You know what the difference is. Isn't that the fact? A. Call it so, if you please. It is to be a correct scale. Q. I would like to have you answer that question. Wasn't that the agreement, you were to pay for those logs at $13 per thousand feet according to the St. Paul boom scale? A. I don't think I ever testified so. (Question repeated.) A. No. * * * Q. And the scale to which you referred as the basis for payment on these logs was that scale which the surveyor general was going to make at the St. Paul boom? A. Yes, sir; that was the basis of payment—the scale of the surveyor general at the St. Paul boom. * * * Q. In buying these logs under that contract, your purpose was, was it not, to receive them and pay for them according to that boom scale at St. Paul? A. Yes, sir.

On his redirect examination the witness testified that:

Q. In your conversation with Nelson in reference to those logs, was there anything said about scale for boomage? A. No, sir. Q. Was there any understanding of that kind? A. No, sir. Q. Was there any agreement or understanding or talk that they were going to be scaled for boomage, and that you were going to pay according to the scale for boomage? A. I had nothing to do with the boomage. Q. Then your answer will be what? A. No.

It would unnecessarily incumber the record to quote all of the testimony of the several witnesses as to the contract. We have, however, attentively considered the entire evidence, and reached the conclusion that the evidence as to the contract is not conclusive in favor of the plaintiffs' contention. The trial judge saw and observed the witnesses, and it may have been obvious to him that the apparent contradictions in the testimony of the witness on behalf of the defendant was due to his failure to appreciate the full scope of the direct questions, which assumed the contract to be as claimed by the plaintiffs, and which he answered in the affirmative. However this may be, the credibility of

the witness was a question for the trial judge, and we hold that his findings of fact as to the contract of the parties and as to the number of feet of logs actually delivered by the plaintiffs to the defendant are sustained by the evidence, when tested by the rule applicable to verdicts and findings of fact. The answer was sufficient to justify the admission of evidence tending to show the actual quantity of logs delivered. We find no reversible error in the record.

Order affirmed.