# STATE v. RED RIVER LUMBER COMPANY AND ANOTHER.[1]

October 26, 1923.

No. 23,661.

**Certificates of state school land void.·**

1. In an action by the state to cancel state school land certificates, *held* that the certificates were void for want of authority in the state land commissioner to sell such lands until the timber was first sold and removed therefrom.

**Jurisdiction of state land commissioner in 1899.**

2. The state land commissioner in 1899 had no jurisdiction to sell pine timber from state lands in the absence of full compliance with the requirements of sections 11 and 18 of chapter 163, Laws 1895.

**When finding of state official on question of fact may be reviewed by court.**

3. Where the legislature commits to a state official the duty and power to determine a specified question of fact, the determination can be reviewed by the court when there is manifest error of such character that it is detrimental to the state, and is such as to cause the existing facts to be so far misapprehended that the result cannot be said to express the real judgment of the official—it amounts to a fraud by implication.

**Case followed.**

4. In order for an action to be controlled by a former decision, there must have been a former trial of the action. Nelson v. Charles Betcher Lumber Co. 96 Minn. 76, followed.

Action transferred to the district court for Clearwater county to cancel sale certificates of state school land and recover for timber cut therefrom. Defendants' motion for judgment on the pleadings was denied and the case was tried before Stanton, J., who made findings, holding the certificates of sale void, and ordered judgment in favor of plaintiff for $7,150.48. Defendants' motion for additional findings and conclusions was denied. From the judgment

[1]Reported in 195 N. W. 495.

entered pursuant to the order for judgment, defendants appealed. Affirmed.

*Lancaster, Simpson, Junell & Dorsey,* for appellants.

*Clifford L. Hilton,* Attorney General, and *James E. Markham,* Deputy Attorney General, for respondent.

WILSON, C. J.

In about the year 1899 the state of Minnesota assumed to sell 280 acres of land in the county of Beltrami, and the same was purchased by E. W. Backus, who then paid the purchase price of the timber thereon and 15 per cent of the purchase price of the land. Thereafter seven usual state certificates of sale were executed, in the form provided by law, and delivered to the purchaser.

At the time of advertising this sale, and at the time of the sale, there was existing, in the office of the state land commissioner, a statement that there was pine on several of the seven 40-acre tracts involved herein, in specified amounts, aggregating 370,000 feet. This statement was the result of an examination and appraisal made by estimators appointed by the state land commissioner.

E. W. Backus and a representative of the Red River Lumber Company were present at the sale, which was conducted by a clerk from the office of the state land commissioner who had with him a record purporting to show, among other things, the minimum price that the state would accept for each tract. The certificates were not issued promptly and the purchaser called upon the commissioner relative to the matter, and the latter, apparently having the same information that his clerk had when making the sale, issued and delivered the certificates.

Mr. Backus bought this land and timber in his own name, but he was acting on behalf of his company (Backus Brooks Company) and the Red River Lumber Company which then contemplated joining in the construction and operation of a sawmill in that locality. It was previously arranged that Backus should do the bidding at the sale. These two lumber concerns did not carry out their plans for joint milling operations, and Backus sold his one-half interest in these lands for $1,800 to the Red River Lumber Company, which

had cruised this land before the sale, and from such examination of the land they and Backus had information, at the time of the sale, as to what the timber was on the land prior to the sale.

In about the years 1902, 1903 and 1904 the Red River Lumber Company cut substantially one million feet of merchantable lumber from this land, and, of this, over 980,000 feet was pine.

In about 1908 the state learned of the extensive logging operations on these lands; ignored the land certificates issued to Backus on said sale; and sued the lumber company to collect damages for trespass, and, upon that claim, the state failed. State v. Red River Lumber Co. 109 Minn. 185, 123 N. W. 412.

In December, 1909, the state brought this action, claiming that the state land commissioner had offered these lands for sale as agricultural lands, when, in fact, they were not agricultural lands, but were timber lands. The complaint alleges that the purchaser knew this and failed and omitted to advise the plaintiff, and the said land commissioner; that the commissioner issued the certificates of sale, through mistake and inadvertence. It is alleged that the certificates of sale are void and do not constitute a valid contract between the parties; that said lands are owned by plaintiff, and that the certificates are a cloud upon the plaintiff's title. The complaint sets forth the various amounts of money paid upon these certificates as payments upon the principal, interest and penalties and offers to return to the purchaser the various sums and interest thereon in the way of a reduction from any sum found due plaintiff.

The state seeks to have these certificates declared void, canceled and set aside; that the title be declared in the state; that plaintiff have a money judgment for the lumber taken, less payments made.

Appellants, in their answer, contend that the sale was valid and made in good faith, and claim that the state has ratified the sale.

Appellants moved for judgment upon the pleadings, which the trial court denied.

The case was tried and the facts found substantially as claimed by the state and its prayer for relief was granted including judgment for the net amount of $7,150.48.

Appellants' motion for amended findings was denied, and they then appealed from the judgment which was entered.

Among the findings of the trial court is this:

"That at the time of the sale of the said lands to defendant E. W. Backus, as aforesaid, the said lands contained a large quantity, to-wit, nearly one million feet, of standing and growing pine and tamarack timber, and said lands were not then agricultural lands, and the fact that said lands were not then agricultural lands, but contained in excess of five hundred thousand feet of pine and tamarack timber, was well known to defendants E. W. Backus and the Red River Lumber Company, and both of them, at the time of said sale and purchase," and among other things the court also found that the land commissioner "was mistaken in declaring the said lands to be agricultural lands and did, as hereinbefore recited, offer for sale and sell said lands wholly without authority and contrary to the provisions of statute. That the said certificates of sale, and each of them, are null and void." Aside from findings of fact as involved in these excerpts of the decision of the trial court, there is little controversy, but the assignments of error and the argument of appellants' counsel vigorously assail the particular findings above mentioned. The other assignments of error are only incidental to these and their disposition necessarily follows a decision on these principal questions.

Section 2 of chapter 38, G. S. 1878, provides that the commissioner of the land office may sell and dispose of all lands, belonging to the state, in such manner as shall be directed by law. Section 6 of this chapter provides that pine lands shall not be sold until the timber thereon has been estimated, appraised and sold according to the provisions of law. By section 2 of chapter 102 of the Laws of 1885, section 6, above referred to, was amended by providing that, when the pine timber has been sold and removed, the land may be appraised and sold in the same manner and on the same terms as other lands are appraised and sold under the provisions of said chapter 38.

Chapter 269, p. 331, Laws 1885, provides:

"Section 1. It shall be the duty of the commissioner of the state land office to make diligent and thorough inquiry and examination into the extent, character and value of the timbered lands belonging to the state of Minnesota, and chiefly valuable for the pine timber thereon belonging to the state of Minnesota, whether designated or set apart as school lands or for other purposes.

"Sec. 2. He shall take such measures as will protect the said timber from damage or loss by fire, trespass or otherwise and make such regulations for the care, control, sale and disposition of the timber lands of the state or the timber thereon as will best protect the interests of the state.  *  *  * "

"Sec. 4. Before any pine timber is sold from any of the lands of the state, the commissioner shall submit the appraisals and estimates of said timber, and statements regarding liabilities to loss or damage to said timber, to the governor, treasurer, and commissioner, and if a majority of them shall state that it is for the interest of the state that such timber shall be sold, and such statement shall be indorsed on the estimate of said timber and signed by said officers officially, the commissioner may then advertise and sell, the timber on said lands so authorized to be sold, in the manner provided by law.; Provided, That no pine timber on any state lands is to be sold under any conditions unless the officers herein named shall state that such sale is necessary to protect the state from loss."

The foregoing statutory provisions are carried into the General Statutes of Minnesota of 1894 in sections 3965, 4008-4011.

Chapter 163, p. 354, Laws 1895, contains language which is pertinent as follows:

"Sec. 11. The commissioner may sell the pine timber or the pine lands in this state, and tamarack and cedar suitable for posts, telegraph poles or railroad ties, when the same is liable to waste, and not otherwise. No such timber shall ever be sold or disposed of unless the same is liable to waste. When such sales are made said commissioner shall execute and deliver to the purchaser a permit

to enter upon the land upon which the timber is growing and to take and remove such timber. * * * "

"Sec. 17. It shall be the duty of said commissioner to make a thorough inquiry and examination into the extent, character and value of the lands belonging to the state, and chiefly valuable for the timber thereon. He shall take such measures as will protect such timber from damage or loss by fire, trespass or otherwise, and make such regulations for the care and control of said timber lands and sales of the timber thereon subject to sale under the provisions of section eleven (11) of this act as will best protect the interests of the state; provided, however, that he shall do nothing which shall conflict with the provisions of this chapter."

The word "or" which is the eighth word in section 11 as quoted above is evidently erroneously used in place of the word "on."

These statutes have been referred to at length to show the existing statutory regulations at the time of this sale. Prior to the passage of chapter 162, p. 196, Laws 1905, there was no statutory provision for the sale of timber by the sale of the land upon which it stood. Our conclusion is that at the time of the sale the commissioner was without authority to sell these lands until the timber was first sold and removed therefrom. It is plain, therefore, that this sale was not made "in accordance with law," and, therefore, under the provisions of section 25, chapter 38, G. S. 1878 (G. S. 1894, § 3986), the same is void and the certificates of sale issued thereon are of no effect.

The pine on these lands was never sold as provided in section eleven (11) of chapter 163, p. 354, Laws 1895, and the permit therein required was never issued. Neither were the requirements of section 18 of chapter 163, p. 357, of the Laws of 1895, satisfied, and hence the commissioner acquired "no jurisdiction whatsoever to make such sale." State v. Shevlin-Carpenter Co. 62 Minn. 99, 64 N. W. 81. This is not a case of error in judgment in matters which the official had authority to determine, but is a case of absolute want of power.

It has been ably argued that the land commissioner was authorized by law to determine what lands were "chiefly valuable for the

timber thereon," and that, having put these lands up for sale, he necessarily classified them as agricultural lands. It is urged that the legislature had committed to the land commissioner the power and duty to determine whether lands were agricultural in character and subject to sale, or pine lands and not subject to sale until the timber has been sold and removed. It is claimed that the limitation imposed upon the sale of state lands by the proviso of section 3965, G. S. 1894, is a limitation upon the sale only of lands which are determined by the commissioner to be chiefly valuable for pine.

If such were then the law, it would not change our conclusion as this position of appellant is sufficiently met by the fact that this record shows that these lands, as the trial court found, were, in fact, timber lands. The fact that the land commissioner sold them as agricultural land does not alter the truth that they were not such. The record shows that these lands were bought, not in the belief that they were agricultural lands, but, solely because of the standing timber, and that these lands were abandoned by the purchaser after the timber was removed. The land commissioner was mistaken in the classification made, but appellants were not in any degree misled by the mistake.

There was manifest error in the determination of the character of these lands. This error was of such nature as to constitute demonstrable mistake; in fact, it was so gross that it amounts to a fraud by implication and is so detrimental to the welfare of the state, and its school fund, that it cannot be said that the parties to the transaction acted in good faith and without improper motive— such conduct implies bad faith and a failure to exercise honest judgment. This mistake caused the then existing fact to be so far misapprehended that the result cannot be said to express the real judgment of the commissioner.

If we should hold that the commissioner then had the jurisdiction and authority, which appellant attributes to him, the facts herein would justify our holding, as we do, that the classification of these lands was the result of manifest error which subjects his decision to review by the court. O'Connor v. Gertgens, 85 Minn. 481, 497, 89 N. W. 866.

The decision of this court in State v. Red River Lumber Co. supra, is not controlling here as the law of the case. The rule in such cases is that a decision on a former appeal reviewing a former trial of an action is the law of the case on an appeal reviewing a second trial, if the evidence was substantially the same on both trials; but, if it was not, the former decision is the law of the case only so far as it is applicable to the facts developed on the second trial. Nelson v. Charles Betcher Lumber Co. 96 Minn. 76, 104 N. W. 833. There has been no former trial of this action. Backus was not a party to the other action which was brought for a different purpose than that for which this action was brought, and in which this court held that the trial court properly dismissed the action, and held that the land certificates could not be collaterally impeached for fraud or mistake by extrinsic evidence.

Judgment affirmed.