## STATE v. ALLYN R. SKELTON.[1]

April 23, 1926.

No 25,232.

**Finding reversed which set aside sale of state land classified as agricultural.**

In a sale of state lands pursuant to L. 1905, c. 162 (G. S. 1923, § 6277), the proof and findings show a full compliance with all the provisions preliminary to a public sale, a sale made, a certificate duly issued and subsequent annual payments and taxes fully met for 11 years. In this action to set aside the certificate issued, the evidence fails to sustain the finding that the land commissioner had made such a mistake in classifying the 40 involved as to indicate bad faith either upon his part or that of the appraisers—the determination of classification and sale being largely vested in the land commissioner by that chapter.

Public Lands, 32 Cyc. p. 1098 n. 39.

Action in the district court for St. Louis county to cancel a certificate of sale of certain state land and to recover the value of timber removed. The case was tried before Grannis, J., who ordered judgment in favor of the state. Defendant appealed from an order denying his motion for a new trial. Reversed with direction to enter judgment in favor of defendant.

*George H. Spear* and *James E. Gardner,* for appellant.

*Clifford L. Hilton,* Attorney General and *Ernest C. Carman,* Assistant Attorney General, for respondent.

[1] Reported in 208 N. W. 660.

HOLT, J.

Action to cancel a certificate of sale of a 40-acre tract, issued by the state to defendant, and to recover the value of the timber removed. From the order denying a new trial, after findings made directing judgment in favor of the state, defendant appeals.

The complaint alleges that at a sale conducted by the land commissioner, state auditor, on April 17, 1912, the land was "by mistake, and not in accordance with law, sold as land agricultural in character;" that it was in fact timber land; and that the value of the timber thereon was greatly in excess of the value of the land. The certificate issued on that date is an executory contract evidencing a sale pursuant to L. 1905, p. 196, c. 162 (G. S. 1923, § 6277), under which $175 was paid down for the appraised value of the timber and $30, being 15 per cent of the purchase price of the land, the balance of $170 to be paid within 40 years with annual interest on deferred payments and the taxes. The undisputed evidence showed a compliance with all the formalities required by that statute before a sale of this land could be made. Defendant testified that he had never seen the land, never removed any timber therefrom, and according to his recollection one Baune, with defendant's permission, made the purchase in defendant's name, at once received the certificate with an assignment thereof in blank from defendant. No evidence to the contrary was offered. The record shows also that all annual payments and taxes as required by the contract have been met. In 1920 the land commissioner sent cruisers to examine the 40. This examination revealing that possibly it was more valuable for its timber than for agricultural purposes, a more thorough cruise was made in the fall of 1921, which showed that the value of the timber at one time standing on the 40 was some $858, of which $480 worth had been removed. There is no testimony as to when the part now represented by stumps was cut or removed or by whom. For aught that appears, this may have occurred before the appraisal of 1910, in which event there would not be much ground for claiming any mistake of consequence, there being but $378 worth of standing timber.

However, if it be assumed that there was a mistake of the appraisers in that there was actually standing timber of the value of $858, instead of the value of $175, what should be the result? The state contends, and the learned trial court concluded that, although different in some respects, the case of State v. Red River Lumber Co. 157 Minn. 7, 195 N. W. 495, controlled. We think the difference in the applicable statutes as well as the difference in facts must lead to different results.

In the case cited the land was timber and not agricultural land. That sale was made in 1899. The statutes then governing are set out in the opinion, wherein it is also stated that "prior to the passage of chapter 162, p. 196, Laws 1905, there was no statutory provision for the sale of timber by the sale of the land upon which it stood. Our conclusion is that at the time of the sale the commissioner was without authority to sell these lands until the timber was first sold and removed therefrom. It is plain therefore, that this sale was not made 'in accordance with law' and, therefore, under the provisions of section 25, chapter 38, G. S. 1878 (G. S. 1894, § 3986), the same is void and the certificates of sale issued thereon are of no effect." At the time of that sale there existed in the land commissioner's office a statement that on several of the forties of the 280 acres involved was pine aggregating 370,000 feet. There the purchaser had cruised the land prior to the sale, knew the actual amount of the timber it contained, and subsequently cut thereon one million feet of merchantable timber, over 980,000 feet of which was pine. The court speaking of the facts says the error in the determination of the character of those lands "was of such nature as to constitute demonstrable mistake; in fact, it was so gross that it amounts to a fraud by implication and is so detrimental to the welfare of the state, and its school fund, that it cannot be said that the parties to the transaction acted in good faith and without improper motive—such conduct implies bad faith and a failure to exercise honest judgment." Hence the conclusion there was that, if under the statutes then in force and applicable the land commissioner could have been held to have had authority and jurisdiction

to make that sale, the classification of the lands as agricultural was the result of manifest error which subjected his decision to sell to review by the court.

The sale in the case at bar was under the subsequently enacted L. 1905, p. 196, c. 162, entitled: "An act to provide for the appraisal and sale of school and other state lands and fixing the minimum price therefor." The commissioner appoints an appraiser, who cannot be a resident of the county wherein are the lands to be appraised; the Governor appoints one who may be such a resident; and the county commissioners appoint the third. After taking the oath of office the appraisers must view and appraise the lands and report to the commissioner as he may direct. The valuation of the land and the timber must be made separately. The minimum price so established shall be the minimum price for which a sale can be made until changed by subsequent appraisal. No school or state lands shall be sold until so appraised, nor for less than five dollars per acre. The land commissioner is directed to hold frequent sales of such lands, and is directed how to give public notice thereof. "At said sales the land commissioner shall sell such lands as he considers for the public interest. Where land mainly valuable for agricultural purposes, as shown by the appraisements and other reports in the office of the land commissioner, contains only small quantities of pine, tamarack, or other timber, the land commissioner may in his discretion, either sell the timber separately in the manner provided by law for state timber sales, or he may sell the land as agricultural land, requiring the purchaser to pay down as first payment an amount equal to the value of the timber, in addition to the fifteen per cent first payment required on the land."

The appraisers were appointed in 1910 and duly appraised and reported a number of scattered forties in township 54 north of range 21 west, among them this 40 which was publicly offered for sale in 1911 and not sold. It was again offered at the sale duly advertised and held on April 17, 1912, when it was sold and the certificate here attacked issued. In no particular is it pointed out wherein there was not a full compliance with the statute mentioned. There

is no charge and no evidence that the appraisers did not view the land and did not honestly and conscientiously appraise and report according to their best judgment. There is no evidence that either defendant or Baune, who was permitted to use defendant's name, had seen or knew anything more about the land than the appraisal showed. The only fact the state has to advance for repudiating the sale is that its second appraisal, made 11 years after its first, shows that at one time the value of the timber was more than that of the land itself. Assuming the timber in the quantities claimed by the state to have been on the land when it was sold, defendant's expert witnesses testified the value did not differ substantially from that the three appraisers reported.

Chapter 162 was no doubt intended to facilitate the disposal of lands that were fit for agricultural purposes and did not contain timber in sufficient quantities and so located with respect to other timber lands that a sale of the timber separately would be profitable to the state. It is desirable to have as much land as possible help bear the burdens of taxation and also to become productive. The evidence is that the soil on part of the 40 is good farm land. It is apparent under the above quoted part of chapter 162 that the commissioner was vested with authority and discretion in making sales thereunder, and that upon the evidence there are no such demonstrable errors or mistakes that bad faith or improper motives may be attributed to any one concerned in the sale. No doubt under that statute discretion is vested largely in the commissioner as to the sale of lands adapted to farming and which contain some timber. Had such a sale been made between private parties it certainly could not have been set aside upon the facts here appearing.

The instant case also differs from that of the State v. Red River Lumber Co. supra, in this that there the purchaser cut and removed the timber and then abandoned the land; here the holder of the certificate has met all instalments, interest and taxes. There is no condition in the statute requiring the purchaser to improve or cultivate the land within any given period after it is bought.

We think the ninth finding of fact that the land commissioner was mistaken in his classification of this 40 upon the evidence before

him is not sustained, and that the state is not entitled upon the findings and the evidence to have the certificate canceled. Having come to that conclusion it is not necessary to consider the laches urged as estoppel, nor the fact that there is no evidence whatever that defendant is responsible for the removal of a single tree from the land.

The order is reversed with direction to amend the findings and enter judgment in favor of defendant.